MEINHARDT BROS. & CO., APPLLLANTS, VS. SOLOMON MODE, APPELLEE.

| 22 | 279 |
|----|-----|
| 34 | 236 |
| 22 | 279 |
| 35 | 374 |
| 22 | 279 |
| 46 | 225 |
| 22 | 279 |
| 52 | 312 |

1. S. M. telegraphed H , who was acting and was dealt with as the representative of M. B. & Co., to draw on a third party for the amount of a judgment in favor of K., which was about to be enforced against the property of the judgment debtor, T. M., and as to which H. had telegraphed S. M., in the name of " M. B. & Co., per J. B. H." H. finding that the representatives of the judgment would not accept such draft because there was no bank in the place of the residence of the person upon whom it was to be drawn, through which it could be collected, settled the judgment by a draft on his principals, who honored it, and then drew in favor of his principals for the same amount on such third party, and she refused payment : *Held,* (*a.*) That the purpose of S. M., as indicated by the telegram, was that the judgment should be paid, and there was nothing in the course pursued under it that exceeded substantially the request or authority it conveyed, or which relieved S. M., from liability. (*b.*) That S. M.'s liability to M. B. & Co., was that of a principal debtor, and not of a guarantor.

2. Where the question is as to the authority given by a telegram, the party to it sued should not be permitted to testify what his intention was in sending it. Such intention, in so far as the authority conferred is concerned, is to be derived from the telegram and the entire contract between the parties.

3. Where telegrams do not contain the entire contract, the other parts of it may be proved by verbal testimony, or by other writings, or by both, as in other cases where the entire contract has not been reduced to writing.

Appeal from the Circuit Court for Nassau County.

This is an action brought by the appellants against the appellee for money paid by them to one Julius Kaufman at the appellee's request, and for money lent to the appellee at his request. There is a plea of never indebted in the record.

Upon the trial before the jury the plaintiffs introduced as a witness one J. B. Hess, who testified that he was the traveling agent representing them, and that in Palatka, on October 16th, 1882, Trespole Myers, a brother-in-law of the defendant, informed him that the Sheriff of Putnam county had " attached " his, Myers', stock of goods, under a judgment in favor of Julius Kaufman against him ; that the defendant and the firm of Mode Bros., of Fernandina, of which defendant was a member, had previously communicated with the plaintiffs in reference to a claim of about $1,100, which the latter held against Myers, and Myers' business. Myers informed witness also that he was unable to pay the judgment and relieve the attachment. Upon consultation, the following telegram was sent: " To Mode Bros., Fernandina : Judgment against Myers here now due. Will be closed up if not paid. Is willing to make assignment to us. He has no money to make payment with. Are you satisfied." It is dated Palatka, October 16, 1882, and signed "Meinhardt Bros. & Co., *per* J. B. Hess." The witness says he received in reply, on the morning of October 17th, a telegram, of which the following is a copy : " To J. B. Hess, care of T. Myers.: Draw at sight upon Hannah Mode for amount of judgment. Get itemized bill of charges from Calhoun. Answer." It is dated Fernandina, October 17, 1882, and signed " Mode Bros." This telegram, the witness says, was sent, and, in fact, signed by the defendant, who subsequently claimed it was not in reference to partnership business. Defendant, in his testimony, admits sending the telegram, and that he had no authority to bind the firm. The attorneys, Calhoun & Calhoun, controlling the judgment, refusing to take a draft on Hannah Mode, because there was no bank at Fernandina through which it could be collected, Hess, as agent for plaintiffs, paid the judgment by draft on his house. Their receipt

containing an itemized statement of the judgment and costs, is in evidence; as is also a transcript of a judgment entered in the clerk's office by confession. Hess then drew a sight draft for the amount he had paid, $227.83, on Mrs. H. Mode, Fernandina, Fla., payable to the order of the plaintiffs, he signing the same J. B. Hess, representative of the plaintiffs, and endorsed the same to W. B. C. Duryea for collection for account of plaintiffs. It was presented for payment and protested for non-payment. The action is for the amount paid on the judgment. Hess says the purpose of his telegram to "Mode Bros." was to provide means to save Myers' stock from sale under the attachment; that it was the only judgment against Myers that he then knew of; that Mr. Epstein, of J. Epstein & Bro., arrived in Palatka on the 17th, and other judgments and claims against Myers being pressed, Epstein induced Myers to make an assignment to his firm of his stock of goods, but that neither the witness nor plaintiffs had anything to do with forcing this assignment; that, in fact, Epstein and Myers tried to keep the knowledge of it from witness until it was ready to be perfected; that after they had agreed upon it, and had it written, they called him in and showed it to him, and he was present when it was executed, and was one of the witnesses to it. It is dated the 17th of October, and is an assignment for the benefit of Myers' creditors, and prefers Epstein & Bro. and the plaintiffs, whose respective claims are stated as amounting to $741.90 and $1,026.60. The witness says that the amount stated in the assignment did not include the sum paid on the Kaufman judgment; that plaintiffs received from the assignment about $800, and have never been paid the sum paid on the judgment; that he was put in charge of Myers' stock by Epstein, and made and recorded an inventory of the property. Here a certificate from the Clerk of the Circuit Court of Putnam

county, of the aggregate amount in dollars and cents, as shown by the inventory made by Hess, attorney in fact for Epstein & Bro., assignees, was offered in evidence, but excluded by the Judge, and exception was duly made at the ruling.  Witness says he made an account of the sales of the stock, and offers in evidence a copy of the same, which he says is a correct copy, but it was excluded, and an exception taken.  Plaintiff then offered to prove by witness how much Myers' stock was inventoried for, and how much it sold for, whether sold to the best advantage, and how much each of Myers' creditors were paid, but the testimony was excluded, and exception taken.  Plaintiffs here rested.

The defendant testified in his own behalf that he is a member of the firm of Mode Brothers, and sent the telegram in evidence, and that he had no authority to bind the firm in this transaction, it not being firm business.  He was then asked by his counsel what were his purposes and objects in sending the telegram referred to.  The plaintiffs' counsel objected on the ground that it was immaterial, but the objection was overruled, and an exception noted, and witness answered as follows:  " When I received the telegram in evidence from J. B. Hess, from Palatka, I understood the paying of this judgment or attachment under which the sheriff had levied on Myers' stock would relieve Myers, and save him from making an assignment.  My purpose then in sending the telegram was to have Hess, the agent of Meinhardt Bros. & Co., draw on Hannah Mode for the amount of said judgment to save Myers from making an assignment of goods."  This testimony was objected to as irrelevant, immaterial, hearsay and matter of opinion.  " I intended for plaintiffs to draw on Hannah Mode, and that only in the event it would save Myers from making an assignment.  Myers subsequently had to make an assign-

ment, in which he preferred plaintiffs among other creditors. I was not informed by Hess of any other judgments against Myers, except the one of Kaufman, when he sent the telegram. Mrs. Hannah Mode, who is my mother, learned of Myers' assignment a day or so after it was made, and before the draft was presented for payment, which being presented some weeks later, she, having learned of the assignment, refused payment." This was also objected to. The witness, under objection, stated that he had never promised, subsequently to sending the telegram, to pay the draft, and had never received any benefit from the payment of the judgment. There were proper exceptions to the above rulings.

*Upon cross-examination*, he says he never communicated to Hess, or to the plaintiffs, his intention as to the purpose for which he sent the telegram, further than what is stated in the telegram; that his understanding was based on the telegram from Hess to him.

The witness, (defendant,) was here shown a letter dated "Fernandina, Fla., Oct. 2, 1882," addressed to "Meinhardt Bros. & Co., Savannah, Ga.," and signed Mode Bros., and being asked who wrote it, answered that he did. It is as follows: "Dr Friends: Our brother-in-law, Mr. T. Myers, arrived here last night out of breath, and at the same time with a wallet full of Putnam county scrip, for the indorsement and acceptance of Mode Bros. Now, gentlemen, we beg to state that our Mr. Mode, Sr., is in New York at present buying a stock, and as this is not a matter of life and death, we must say we do not wish to worry him while there. He will, no doubt, be home shortly, and will submit the entire matter to him on his arrival. *Rest easy,* gentlemen, none of you are going to lose anything on Mr. T. Myers. Hoping this will be satisfactory until his return, we remain, truly yours, Mode Bros."

This letter was offered in evidence by plaintiffs, but ex-cluded on being objected to as immaterial, and there was an exception.

The other facts of the case are sufficiently stated in the opinion.

*Call & Jones* and *C. P. & J. C. Cooper* for Appellants.

*H. J. Baker* for Appellees.

The plaintiff must show that the money was paid at de-fendant's request, expressed or implied. Chitty on Plead-ing, p. 350.

The telegrams in evidence show no request to Meinhardt Bros. & Co., to pay the judgment, or to assume any liabil-ity whatever, and no request so to do can be inferred there-from upon any reasonable construction. The payment was without authority and officious. Further, the testimony does not show any subsequent assent, approval or adoption of the payment by Mode or benefit to him, from which an implied promise to pay could arise, hence the testimony en-tirely fails to sustain the plaintiffs' case under the issue joined.

The payment was voluntary and unnecessary.

"Money paid voluntarily does not impose a liability on another to repay unless payment was made at his request." Kenan vs. Halloway, 16 Ala., 162; 50 American Deci-sions, 162.

"To sustain count for money paid, the plaintiff must prove actual payment and the defendant's prior request so to do or his subsequent assent and approval of the act." 2 Greenleaf on Ev., sec. 113.

Money paid without prior request only becomes a liabil-ity where party for whom paid assents or adopts the act or

accepts a benefit from it. (Nothing of the kind here shown.) Kenan vs. Halloway, 50 American Decisions, 162, reported from 16 Alabama Rep.

If it is claimed the money was paid under a mistake of facts, it could not then be recovered by Meinhardt Bros. & Co., from Mode, for the reason, if no other, that the payment was voluntary and they themselves derived the only benefit from the pay, to-wit: an assignment in their interest of Myers' stock of goods, which they could not have obtained without payment of the judgment. See Norton vs. Marden, 15 Maine, 45 ; 32 Am. Dec., 132.

The letter of Mode Bros. to Meinhardt Bros. & Co., dated October 2, 1882, offered in evidence and ruled out by the court (exception taken in bill of exceptions) was clearly immaterial and irrelevant. It was prior in date and had no relation to the transaction in issue, was not legitimate on cross, &c.

The exception to the testimony of Solomon Mode was not well taken, inasmuch as it is competent to explain the circumstances under which a telegram is sent.

The extent to which telegrams are to be treated as contracts depends upon the circumstances in which they are sent and the intent and object for which they are transmitted and received. Beach vs. Raritan and Del. Bay Co., 37 New York, 457.

The Judge's charge on this point is likewise sustained by the same decision.

The first charge offered by plaintiffs' counsel was properly rejected. It has no application to the testimony.

The only authority given to Hess by Mode was to draw on Hannah Mode to relieve Myers from the necessity of assignment in consequence of the outstanding judgment ; no other purpose or authority can be reasonably or legiti-

mately deduced from the telegrams taken together, or from the circumstances in which they were transmitted.

The second charge offered by plaintiffs, to the effect that the jury could not infer fraud, &c., was not appropriate, inasmuch as no fraud was pleaded or urged.

MR. JUSTICE RANEY delivered the opinion of the court:

The authorities cited upon the subject of guaranty are not in point. This is not a case of guaranty. Though the appellants who were plaintiffs below were creditors of the judgment debtor, Trespole Myers, their claim against Myers is not the subject matter of the particular transaction out of which their claim against the appellee grows. They had no interest in the judgment of Kaufman against Myers, which judgment their money has in fact paid, and there is, in the matter now in controversy, nothing in the nature of an agreement to pay any debt due by Myers or any one else to plaintiffs. If there is any indebtedness from the appellee to appellants it is as a principal debtor, and not as a guarantor for another person primarily liable and upon whose default the appellee's liability is to arise. Baylies on Sureties and Guarantees, 641 ; Parsons on Contracts, 494 ; 3 Kent's Com., 121, 122 ; Gallagher vs. Nichols, 60 N. Y., 438. Mrs. Mode has never been a debtor of plaintiffs.

It is clear that Hess was acting for and as the representative of the plaintiffs and was so dealt with. Not only is this not denied, but he signed either their firm name, or his own, as their reprepresentative in the transaction, and they by their action have ratified his acts. The plain meaning of the telegram of the 17th of October to him was that the Kaufman judgment should be paid. The defend-

ant who had used, without authority, the firm name of his business partnership, cannot be heard to say for his own benefit or relief, either that he did not have authority from Mrs. Mode to draw on her, or that he did not expect she would honor the draft. We do not see that the defendant can complain of Hess having used a draft on his house in carrying out the purposes indicated by the telegram. Had he drawn in favor of the judgment creditor, Kaufman, or Kaufman's attorneys, and cashed the draft for and taken an assignment of it to his house, relying upon its being paid, as he had the right to do from the telegram, he would have acted no more within the real purpose indicated by the telegram than he did act; and the defendant has now no more cause for complaint, in so far as the drafts are concerned, than he would have in such case. As it is, the plaintiffs have in effect merely cashed a draft which their agent acting in their name was authorized to draw. We do not see that there has been anything more than a good execution of the request made and authority given, or any substantial departure from what was authorized to be done. Story on Agency, §172. There was no direction which required that the draft should be drawn in favor of the judgment creditor or other particular person. No harm has been done the defendant, there is no material departure from the instructions given, and nothing he can complain of in this feature of the business. It is argued by counsel for appellee that Hess acted officiously, and not pursuant to any request expressed or implied in the telegram, nor for the purpose of effectuating any end indicated by the telegrams, but rather in the interest of plaintiffs to obtain the assignment of Myers' stock in which plaintiffs were interested. The construction that payment of the judgment was not a purpose indicated by the telegram, or that Hess was not requested by the tele-

gram to do that which would effect such purpose, is not reasonable, and there is nothing in the telegram that justifies the conclusion that he was acting merely officiously and in the interest of plaintiffs to obtain an assignment of Myers' goods, and not pursuant to the telegram. If the telegram authorized the payment it was not voluntary. We think it did authorize it. If it was not intended to effect a payment, it was a delusion and would, if such, have effected only delay or fraud.

Whether or not there was any previous action on the part of the plaintiffs, either by themselves, or by their agent, Hess, which entrapped the defendant into sending the telegram, or any subsequent action on their part which relieves the defendant from the liability which would otherwise exist, is another question. In so far as the testimony shown by the bill of exceptions to have been *submitted to the jury* is concerned, we find that the defendant at some time previously to the sending of the telegram from Palatka to Fernandina had communicated with plaintiffs in regard to their claim against Myers, and the latter's business. The nature of this communication was not shown to the jury. The telegram from Palatka represented that there was a judgment against Myers, and that he had no money to pay it with, and would be closed up if it was not paid. The truth of these representations is not questioned. There was, *in fact*, an entry of a judgment in the clerk's office. It is claimed by defendant in his testimony that he understood that the payment of the judgment, under which the judgment creditor had levied on Myers' stock, would relieve Myers and save him from making an assignment, and his " purpose was to have Hess, the agent of Meinhardt Bros. & Co., draw on Hannah Mode for the amount of the judgment, to save Myers from making an assignment of goods." He further states that he never commu-

nicated to Hess, or to the plaintiffs, his intention as to the purpose for which he sent the telegram, further than what is stated in it, and that his understanding was based on the telegram from Hess to him.  Hess says the purpose of his telegram to Mode was to provide means to save Myers' stock from sale under the judgment, and that it was the only judgment against Myers he then knew of.  There is nothing in the telegram sent to Mode which holds out the assurance that Myers either would or would not make an assignment if the judgment was paid.  Nothing is said in it about any but one judgment, and as to this the plain representation is that Myers has not got the money to pay it, and if not paid he would be closed out, and though Mode had a right to infer that the result of a sale of Myers' goods would follow, if there was not a payment, we do not think his conclusions as to an assignment were legitimate.  If his understanding was that Myers' stock had been levied upon and that a sale would be made unless the judgment was paid, he must have also understood that if the judgment was not paid there could be no assignment by Myers to the extent that his goods would be necessary to satisfy the judgment and costs of sale.

Hess says he did not know of any other judgment and that he did not have anything to do with forcing the assignment, that the making of the latter was kept from his knowledge until it was ready to be perfected, and after they had it written they called him in, and he witnessed its execution.  This assignment is not to plaintiffs, and plaintiffs are not shown to have induced it.  There is in the making of an assignment, or the fact that plaintiffs were among the preferred creditors therein, or the fact that Hess acted subsequently as attorney in fact or agent for the assignees, and was put in charge of the goods, nothing which

of itself in law relieves the defendant from the liability incurred by him through the telegram and the subsequent action of Hess thereunder for the plaintiffs.

The defendant should not have been permitted to state what his intention in sending the telegram was. The entire contract between the parties relating to the subject, whatever such contract was, should have been permitted to go to the jury. The intention of parties contracting is to be derived from the terms and subject matter of the contract, and not from the statement of one party to it as to what may have been his understanding or individual intention. The doctrine of the case of Beach vs. R. & D. R. R. Co., 37 N. Y., 457, cited for appellee, is that the extent to which telegrams between parties are to be treated as written contracts depends upon the circumstances in which they are sent and the intent and object for which they are transmitted and received; that where there has been a previous communication between the parties with reference to the subject matter of the contract, and the telegram is sent to fix some one of the details of the agreement between them, such *telegram* is evidence only of the purpose for which it was sent and does not constitute the contract; that where the original propositions or agreement between the parties were oral they may be proved by oral evidence, as modified or affected by the telegram. See also Barnett vs. Robinson, 18 Fla., 602.

The telegram was held in the above case from New York to be the evidence of the purpose for which it was sent. Where the entire contract is not in writing the omitted parts may be proved orally. If the telegrams in the case before us do not contain the entire contract (as is frequently the fact) the other parts may be proved by verbal testimony, or if there are other writings constituting a part of the contract they can and should be put in evidence. Had

there been an agreement previously made between the parties, and in pursuance of which Hess was to send the telegram, it should be admitted as part of the contract.  The rule is simply that the entire contract, whether it be all in writing, in one paper or in several papers, or partly in writing and partly by parol, should be proved, and this is not at all inconsistent with the rule that where parties have reduced their contract to writing, parol testimony of previous or contemporary communications shall not be used to alter or add to the language used in the instrument or instruments in which the contract is embodied.  Story on Agency, sec. 79.  In view of the fact that the defendant says he did not communicate to the plaintiffs or Hess his " intention as to the purpose for which " he sent the telegram further than is stated in it, the statement of such intention was the more inadmissible, and should have been stricken out.  The rule which prevails where the question at issue is whether a party did a certain act with a *fraudulent* intent as in Germania Fire Insurance Co. vs. Stone, 21 Fla., is not applicable here.

What we have said sufficiently disposes of the points made in the brief of the appellants, and indicates our views for further proceedings on a new trial.  The assignments of error not discussed in the brief for appellants, are treated as abandoned.  Southern Express Co. vs. Van Meter, 17 Fla., 733.  We think the verdict was contrary to the evidence, and must grant a new trial.

It is so ordered.