105 So.2d 895 (1958)
BESSEMER PROPERTIES, Inc., a Delaware Corporation authorized to bo business in the State of Florida, Appellant,
v.
Irving BARBER, non-bankrupt member of a Joint venture composed of Irving Barber and Louis L. Jacob, Inc., a Florida corporation, Appellee.
No. 71.
District Court of Appeal of Florida. Second District.
October 22, 1958.
Joel R. Wells, Jr., of Maguire, Voorhis & Wells, Orlando, for appellant.
Julian K. Dominick, of Fishback, Williams, Davis & Dominick, Orlando, for appellee.
*896 SHANNON, Judge.
The appellant, who was the plaintiff below, brought suit against the defendant, Irving Barber, as a member of a joint venture composed of the defendant and Louis L. Jacob, Inc., for a balance owing on a certain quantity of Valencia oranges allegedly sold by the plaintiff to the joint venture. Louis L. Jacob, Inc., was at the time of the suit in bankruptcy. The plaintiff alleged that there was a partnership in the purchase of the fruit while the defendant maintained that there was a partnership, but that the partnership was engaged in selling the fruit after it had been purchased by Louis L. Jacob, Inc. and that he, the defendant, was not a member of any partnership in the buying of the fruit from the plaintiff.
The case was tried without a jury and the trial court entered a judgment for the defendant, and hence this appeal.
The plaintiff has but two questions involved in the case: one, as stated by him, where two dealers in citrus fruit enter into a secret joint venture whereby it is agreed that one will buy and pack the fruit, and the other will share the profit or loss from the resale, is the joint venture liable to the grower for the purchase price of a crop of oranges bought and packed by the active co-venturer, and sold for the account of the joint venture, and two, did the admission of testimony in variance to the written agreement violate the parol evidence rule?
In connection with the first question the defendant takes the position that the point involved is whether the defendant agreed with the fruit packing company that he would share in the profits and losses for the resale of the fruit that was bought by the fruit company. It is primarily a question of timing as to when the partnership arrangement came into play. The plaintiff maintains that the partnership was in force at the time of buying the fruit and the defendant maintains that the partnership was only for the resale after the packing of the fruit.
To sustain his position the plaintiff attached to his complaint the following memorandum of agreement:
"To: Irvin Barber
"Memorandum of Summer Valencia Joint
"Louis L. Jacob, Inc. has agreed to joint their entire summer orange operation with the above, and it is agreed that Louis L. Jacob, Inc. and Mr. Barber will share in all profits and losses on any oranges purchased up to this time and those purchased in the future, or until the start of the new crop year. This will acknowledge receipt of Mr. Barber's check for $28,000.00.
"Crops already purchased for summer movement include the following:

"Frank Sharpe, Orlando  4,500
 Late Blooms Vals. $2  $2.25
Finley  Mason, Polk City 6,000
 Pope Summers 2.50
Henry Symonds, Orlando Velencias 5,500
 2.00
Updike  Partnership
 Lake Wales 25,000 Valencias 2.50
F.M. Ashbrook, Dade City Valencias 1,200
 2.05

"In addition to these it is assumed that this partnership will pick approximately 40,000 boxes Pope Summer oranges from Port Mayacca (price to be determined weekly) and 7,500 boxes Pope Summer oranges from Karst, Inc., located on the Indian River. Also, it is assumed that the partnership will purchase additional crops of June bloom and Pope Summer oranges as the market warrants.
"In the interest of clarity it is understood that this agreement includes no grapefruit or other citrus varieties and will be concluded with shipment of the first Hamlins out of the state.
 "Very truly yours,
 Louis L. Jacob, Inc.
 By /s/ James Robinson"
*897 In addition to the memorandum already cited the plaintiff also put into evidence the claim of the defendant in the bankruptcy proceedings of Louis L. Jacob, Inc., which reads in part as follows:
"2. That the consideration of said liability is as follows: Deponent entered into a joint venture with Louis L. Jacob, Inc. for the summer orange operation and advanced the sum of $28,000.00 on July 14, 1955 for that purpose to Louis L. Jacob, Inc.; said orange operation lost $19,228.24, one-half of said loss being $9,644.12, and said deponent is entitled to $28,000.00 less the $9,644.12 or $18,355.88."
The defendant testified himself and also had the general manager of Louis L. Jacob, Jr., Inc., who had signed the memorandum of agreement with the defendant. Robinson's testimony supported the defendant and also explained that the memorandum of agreement did not contain an entire contract with the defendant but that the entire contract between the parties was one wherein the defendant became a partner of Louis L. Jacob, Inc., when the fruit had been actually picked and defendant had advanced $28,000 to the account of the partnership to take care of the packing charges, etc. The defendant also testified in substance in accordance with Robinson's testimony.
The trial judge heard all of the witnesses, from whom the evidence was taken, and reached a conclusion that was adverse to the plaintiff. With this conclusion this court will not differ. The plaintiff urges that the fact of the defendant being a silent partner of Louis L. Jacob, Inc., is no defense to this action. It cites cases to that effect. The law is quite plain that the defendant would be liable regardless of whether he was a silent or known partner in the actual purchasing of the fruit from the plaintiff. For this proposition of law plaintiff cites us 40 Am.Jur., Partnerships, p. 259, wherein it is stated:
"A dormant partner who participates in profits may in like manner be held subject to the normal liabilities of partners, however secret he may keep his relation, because the law will not allow a dormant partner secretly to share in the profits of the firm without taking his share of the risks and bearing his share of the losses as to third persons. and this rule holds true in a case where the dormant partner was not known as a member of the firm at the time of the creation of the debt, and in spite of any agreement entered into between the parties, purporting to limit the liability of the dormant partner."
However, it isn't on this proposition that the trial judge ruled. He ruled directly that the defendant was not a party in the actual purchasing of the fruit. The defendant cites us to the Washington case of Farmers' Bank of Weston v. F.M. Balcom Co., 162 Wash. 250, 298 P. 435, 437, in which the court stated the facts:
"* * * there is nothing in this record showing that Balcom Company authorized Grafton to purchase for it, or for it and Grafton jointly, any potatoes at any time. All potatoes acquired by Grafton and sold by him to Balcom Company, as well as all other potatoes, much more in quantity, acquired by Grafton and sold by him to others, were acquired by him wholly apart from any joint venture or agency relationship with Balcom Company. Grafton was not buying potatoes as agent of Balcom Company or as a joint adventure with Balcom Company at any time."
In the Balcom case the court came to the conclusion that the purchasing of the potatoes from the grower would in effect not make Grafton and Balcom Company joint venturers or partners in the actual purchasing of the potatoes.
The trial judge having found that the partnership or a joint venture did not *898 exist in the purchasing of the fruit from the plaintiff, we will concur with him.
The second question is directly concerned with whether or not the evidence seeks to vary a written contract, if it does, the lower court is in error, and if it doesn't the lower court is correct in its ruling.
Under "parol evidence" the correct rule is laid down in Volume 10, Encyclopedic Digest of Florida Reports, Section 9, page 624, as follows:
"`Where a written instrument executed pursuant to a verbal agreement or negotiation does not express the entire agreement or understanding between the parties, the parol evidence rule does not apply to prevent the introduction of extrinsic evidence with reference to matters not provided for in the writing.' 22 C.J. 1283, par. 1715; McNair, etc., Land Co. v. Adams, 54 Fla. 550, 45 So. 492." McClure v. Century Estates, 96 Fla. 568, 120 So. 4, 10; Meinhardt Bros. & Co. v. Mode, 22 Fla. 279.
In Wigmore's Third Edition, Section 2430, page 98, is this language:
"(1) Whether a particular subject of negotiation is embodied by the writing depends wholly upon the intent of the parties thereto. In this respect the contrast is between voluntary integration and integration by law (post § 2450). Here the parties are not obliged to embody their transaction in a single document; yet they may, if they choose. Hence it becomes merely a question whether they have intended to do so.
"(2) This intent must be sought where always intent must be sought (ante, § 42, 1714, 1790), namely, in the conduct and language of the parties and the surrounding circumstances. The document alone will not suffice. What it was intended to cover cannot be known till we know what there was to cover. The question being whether certain subjects of negotiation were intended to be covered, we must compare the writing and the negotiations before we can determine whether they were in fact covered. Thus the apparent paradox is committed of receiving proof of certain negotiations in order to determine whether to exclude them; and this doubtless has sometimes seemed to lower the rule to a quibble. But the paradox is apparent only. The explanation is that these alleged negotiations are received only provisionally. Although in form the witnesses may be allowed to recite the facts, yet in truth the facts will be afterwards treated as immaterial and legally void, if the rule is held applicable. There is a preliminary question for the judge to decide as to the intent of the parties, and upon this he hears evidence on both sides; his decision here, pro or con, concerns merely this question preliminary to the ruling of law. If he decides that the transaction was covered by the writing, he does not decide that the excluded negotiations did not take place, but merely that if they did, they are legally effective, and he then leaves to the jury the determination of fact whether they did take place."
It must be remembered that only the parties to a contract, or their privies, may invoke the parol evidence rule. 13 Fla.Jur., Evidence, § 384; Palmer v. R.S. Evans, Jacksonville, Inc., Fla., 81 So.2d 635; and Roof v. Chattanooga Wood Split Pulley Co., 1895, 36 Fla. 284, 18 So. 597.
The trial court held that the memorandum in the present case was not a contract in and of itself and hence, the testimony that was allowed, together with the memorandum, made out the entire contract and this, also, was not error.
Affirmed.
ALLEN, Acting Chief Judge, and MORROW, R.O., Associate Judge, concur.