THE PEOPLE, RESPONDENTS, *v.* JOHN C. PAGE, APPELLANT.

EXCEPTIONS—ASSIGNMENT OF ERRORS.—Appellant may except to any erroneous ruling of the court below, but he must, in his assignment of errors in this court, specify and point out those upon which he relies, otherwise all such will be treated as waived.

INDICTMENT—CRIMINAL LAW—PLEADING.—P. was indicted under the latter clause of section 88 of the crimes and punishment act, in which indictment the crime was charged in the following language: "Knowingly and willfully did have in his possession and secretly did keep (enumerating the instruments), then and there being instruments for the purpose of counterfeiting uncoined gold," etc.: *Held*, that this indictment was not sufficient, in not charging that these instruments were had by the defendant for the purpose of counterfeiting, etc.

IDEM.—A gross error on the face of the indictment is that it charges that the defendant is guilty of a "felony," instead of naming the real offense—that of having and secretly keeping instruments for the counterfeiting of gold dust, feloniously, etc.

EVIDENCE—PRESUMPTIONS.—The knowingly and secretly keeping instruments adapted and intended for the unlawful business of counterfeiting, is made proof of the guilty aim to use them for the evil purpose for which they were evidently designed. It is a presumption that the prisoner is called upon to rebut.

APPEAL from the third judicial district, Ada county. That part of the indictment in which the alleged defect occurs reads as follows: "The said John C. Page on the fifteenth day of November, 1866, at the county of Ada, did knowingly and willfully have in his possession and secretly did keep one furnace, three bottles acid, one mortar and pestle, two sieves, one pair tongs, one gold pan, one large file, one frying-pan, one lot buckshot, one sack of spelter, one sack of sand, two crucibles, six iron bars, the same then and there being instruments for the purpose of counterfeiting uncoined gold, gold lumps and pieces commonly called gold dust, then and there currently passing in the territory of Idaho, contrary," etc.

Trial, and verdict of guilty. Motion in arrest of judgment, upon the ground that the indictment did not contain facts constituting a public offense; also motion for a new trial, both of which were denied.

*Curtis & George,* and *Huggan & Ganahl,* for the appellant.

*Heed & Miller,* for the people.

McBRIDE, C. J., delivered the opinion of the court, KELLY, J., and CUMMINS, J., concurring.

The defendant, John C. Page, was indicted with others, in the district court of the third judicial district, by the grand jury of Ada county, territory of Idaho, for the offense of having in his possession and secretly keeping instruments for the manufacture of what is termed, in the common phrase of the country, "bogus dust." The defendant had a separate trial and was convicted. After the verdict of the jury was rendered, a motion was made by counsel for the prisoner in arrest of judgment, assigning for cause that the indictment was defective, and did not charge the defendant with any offense known to the law. This motion was overruled by the court and exception taken. The defendant then moved for a new trial, and assigned for causes several: 1. Misconduct on the part of the jury; 2. Refusal of the judge to give certain instructions to the jury, which refusal was excepted to; 3. Admission of improper testimony by the judge in the trial below; and, 4. Insufficiency of the evidence to justify the verdict.

The motion for a new trial was overruled by the court, and exceptions taken. From these rulings of the court the defendant appeals to this court. The appellant's counsel, in the argument of this cause, alluded to the fact that the record disclosed many exceptions to the ruling of the court below in the admission of testimony, etc., and intimated an opinion that the court would examine and determine upon the merits of these exceptions. We desire in this connection to say that, although an appellant may except to any erroneous ruling of the court below, he must, in his assignment of errors in this court, specify and point out those upon which he relies. The appellant must not say generally that there are errors in the record to which he has taken exceptions, and then call upon the court to go through that record and hunt them up; but he must, in his assignment of errors, point out specially such as he wishes to have reviewed; otherwise we shall treat all such as waived. In considering this case, therefore, we will only pass upon

such questions and alleged errors occurring in the court below as our attention has been directed to in the argument assigning such errors.

The first error assigned is that the facts stated in the indictment do not constitute a public offense. If this be true, the defendant might have demurred to the indictment before the trial, and had the right to move in arrest of judgment after the verdict. The statute under which the indictment was found makes it a public offense, a felony, for any person to knowingly have and secretly keep instruments for counterfeiting gold dust with the purpose of using them. To constitute the offense there should exist the following facts: The defendant should have the instruments in his possession; they should be secretly kept; they should be instruments adapted and designed for the commission of the offense; and they should be kept for the purpose of committing that offense. Does the indictment in this case charge the defendant with these facts? We will briefly analyze it. It charges him with having the instruments in his possession; it charges him with keeping them secretly; it charges that they are instruments adapted to the unlawful purpose of counterfeiting gold dust; and here the indictment stops. It does not charge the defendant with having the counterfeiting instruments in possession, secretly, for the purpose of using them. If it be said that the words, "then and there being instruments for the purpose of counterfeiting uncoined gold," were meant to charge the guilty purpose on the defendant, then it leaves the indictment equally defective; because there would be no allegation of the design and adaptability of the instruments to the unlawful purpose. As the indictment now stands, the defendant might admit every allegation of fact contained in it, and yet be perfectly innocent of any offense known to the law. He could admit that he had the instruments and materials charged knowingly in his possession; that they were secretly kept, and that they were adapted and designed for counterfeiting; and yet, unless the defendant intended to use them for that unlawful purpose, he would be innocent of crime. If, on the other hand, we adopted the construction of this indict-

ment contended for by the counsel for the people, the defendant would be charged with having the enumerated instruments in his possession, with keeping them secretly, and for the purpose of using them; but it would not show that they had any adaptation to the design, or that he could effect the unlawful purpose by the use of them, and the law will not punish one who is not shown to have the means of committing the offense. We find ourselves, therefore, driven to the conclusion that the indictment is radically defective, and the court below erred in overruling the motion for arrest of judgment.

There is another gross error on the face of the indictment, which we allude to simply to prevent its repetition. The indictment charges that the defendant is guilty of a "felony," instead of naming the real offense—that of having and secretly keeping instruments for the counterfeiting of gold dust, feloniously, etc. No exception to this was taken before the trial, or after; and perhaps after verdict it would not avail the defendant; but the error is one that is too palpable and unnecessary to be passed over without animadversion. Indictments for offenses should be carefully and considerately drawn, and it is idle to attempt to punish crime unless public prosecutors faithfully do their duty. Judges are not prosecuting officers, and ought not to be expected to assume the functions of such. A judge should see that a fair and impartial hearing is given the people and the prisoner, and it is entirely inconsistent with his position that he should be the monitor of the prosecuting officer, or identify himself in the least degree with the conduct of the trial on either side of a criminal cause.

It appears from the instructions given the jury in the court below, that the necessity of finding the guilty purpose with which the instruments were kept, were clearly indicated to the jury, and it is somewhat strange that the defect was unnoticed by the prosecutor, and even the defendant's counsel, until after the trial. In future we hope to be compelled to comment upon such carelessness no more. There was also a motion made in the lower court for a new trial upon several grounds assigned. This was overruled, and

the exception is before us on this hearing. A decision on these questions is not necessary of course to a determination of this case; but we allude to some of the points raised, for reasons of general interest to the profession.

It is alleged there was misconduct of the jury because a file, which had been used in evidence on the trial alluded to by counsel on the argument, and examined by the jury, was conveyed to the jury-room by the officer who had them in charge while they were deliberating. It is difficult to see, in the absence of any proof, that the presence of the file in the jury-room was prejudicial to the defendant any more than to the cause of the people. It was admitted to be the same instrument—no change is alleged to have occurred in its condition or appearance from the time it was exhibited to the jury in evidence and the time when it was conveyed to them by the officer, and unless the court could be satisfied that it had some prejudicial influence, the irregularity would be disregarded. That the officer who conveyed the file to them without authority was culpable is clear. He is sworn by the requirements of the statute to "not communicate with the jury himself, nor to allow any one else to do so, except to ask them if they have agreed, without authority of the court." Any departure from the duty thus solemnly imposed upon an officer having a jury in charge, is highly reprehensible, and while the misconduct of such officer might not necessarily vitiate the result of the deliberation of a jury in his charge, his fault is none the less.

Another point of some interest and importance urged as ground for new trial in this case, is that there was no proof of the guilty purpose of the defendant to use the instruments in counterfeiting, as charged. The well-established rule in the enforcement of the statutes against counterfeiting in all the states, is that the knowingly and secretly keeping instruments adapted and intended for the unlawful business is made proof of the guilty aim to use them for the evil purpose for which they were evidently designed. It is a presumption that the prisoner is called upon to rebut. He must show that while they are a badge of guilt, he was using them, or intending to use them, for a lawful and innocent

purpose.    Experience has shown this rule not to be a harsh
one in cases of this character.   If one is engaged in manu-
facturing jewelry, or experimenting in metals or ores, the
innocence of his occupation will be manifest by many little
incidents that would protect him before an intelligent jury.
On the contrary, if he be guilty, he will be likely to shrink
from any exhibition of his labors, and trust to the doubts of
the tribunal before which he is heard.    We think that the
rule laid down by the prisoner's counsel is too broad, and
does not apply to this class of cases, and that the one we
have indicated above, and which was not harshly applied
by the court below in this case, is the true one.

On the other point made as to the admission of the letter of
Murphy, an accomplice of the prisoner, we do not see any
error.   It was admitted on the express ground that the jury
were to be satisfied from the evidence *aliunde*, that the pris-
oner was an accomplice of the writer, and unless they so
found, it could not of course apply to or prejudice him.
Whether the confederation between Murphy and the pris-
oner and others was established or not, was a question for
the jury: if they believed it was, then the letter was proper
testimony for them to consider; if not, then it could have
no weight.   We do not see that the verdict indicates that
the jury were mistaken as to there being a confederation,
and if so then their finding on the guilt of the prisoner can
not well be attacked.

The judgment in this case is that the judgment of the
court below be reversed, that the motion for arrest of judg-
ment be sustained, and the indictment be dismissed, and
the prisoner remanded to await the action of the grand jury
of the proper county.