JOHN J. LAMB, *Plaintiff in Error*, v. THE STATE OF FLORIDA, *Defendant in Error*.

En Banc.

Opinion Filed December 19, 1925.

Petition for Rehearing Denied February 10; 1926.

1. An indictment should not be quashed if it charges the offense substantially in the language of the statute or in language of equivalent import. Sections 6063 and 6064, Rev. Gen. Stats. of Florida, 1920; Akin v. State, 86 Fla. 564, 98 So. Rep. 609, and cases cited; Hall v. State, decided this term.

2. The test of the sufficiency of an indictment under our law is whether or not it is so vague, inconsistent and indefinite as to mislead the accused and embarrass him in the preparation of his defense or expose him after conviction or acquittal to substantial danger of a new prosecution for the same offense.

3. Testimony of threats made by the accused or by a co-defendant in the presence of the accused, prior to the killing is

always relevant to show malice, or when made long before, to show deliberation or premeditation.

4. The relevancy of threats depends largely upon the light they shed on previous malice or premeditation. Hence their remoteness in time is no objection to their reception, though it may and indeed must be considered in determining their weight as evidence of existing intent.

5. It is the general practice both in civil and criminal cases, in the absence of statutory provisions to the contrary, to permit the jury to take with them to the jury room on retirement, all articles introduced in evidence which in the opinion of the trial judge will aid them in their deliberations, what articles should be so taken being ordinarily in the discretion of the trial court.

6. A new trial will not be granted because the jury was permitted to carry with them to the jury room articles introduced in evidence which would aid them in their deliberations unless it can be shown that they received testimony therefrom other than that adduced at the trial, and that such additional testimony was prejudicial.

7. When the trial court has heard the testimony and fully investigated charges of disqualification as to any one or more jurors in a cause, and has in the exercise of a sound discretion pronounced them qualified, his finding will not be disturbed by the appellate court unless abuse of discretion is made to appear or material rights of some party or parties to the cause is shown to have been prejudiced.

8. When a jury has returned its verdict and been discharged the burden is on the one charging the disqualification of any member thereof, to show that such juror was prejudiced in respect to some party to the cause, that such prejudice was improperly withheld before acceptance on the jury, or that such juror gave false answers to opinion on voir dire examination or that such juror was in some other respect disqualified to sit as a juror in said cause.

9. No charge is warranted that does not state the law of the case correctly, and is not predicated on the facts in evidence.

10. Testimony examined and found sufficient to support verdict.

A Writ of Error to the Circuit Court for Manatee County; W. T. Harrison, Judge.

Affirmed.

*Thomas Palmer, Knight, Thompson & Turner, W. B. Dickenson, John B. Singletary, Dewey A. Dye* and *John Taylor,* for Plaintiff in Error;

*Rivers Buford,* Attorney General, *Marvin C. McIntosh,* Assistant Attorney General, *Herbert S. Phillips* and *O. K. Reaves,* for the State.

TERRELL, J.—John J. Lamb was indicted and tried for murder in the first degree at the Spring Term of the Circuit Court for Manatee County. He was convicted of murder in the first degree with recommendation to mercy, and sentenced to imprisonment by confinement in the State prison at hard labor for the term of his natural life. Motions to quash the indictment and for new trial were denied and writ of error taken to the judgment.

The first assignment of error challenges the denial of the motion to quash the indictment because the word ''did'' is omitted from the concluding paragraph thereof, and because of such omission the indictment fails to charge that plaintiff in error killed Harold Gates.

An indictment should not be quashed if it charges the offense substantially in the language of the statute, or in language of equivalent import. Secs. 6063 and 6064, Rev. Gen. Stats. of Florida, 1920; Akin v. State, 86 Fla. 564, 98 South. Rep. 609, and cases cited; Hall v. State, decided this

term. It cannot be said that the indictment in this case is so vague, inconsistent and indefinite as to mislead the accused and embarrass him in the preparation of his defense or expose him after conviction or acquittal to substantial danger of a new prosecution for the same offense. Such being the test to determine the sufficiency of an indictment in this State and the test having been substantially met, it was not error to deny the motion to quash.

The second, third, fourth, fifth and sixth assignments of error challenge the ruling of the trial court admitting evidence of certain threats made by plaintiff in error and testified to by State witnesses Frank Blackburn, Sadie Davis, Elam Rood and Harvey Tillis.

Plaintiff in error contends that evidence of these threats should not have been admitted because (1) they were too remote; (2) the State was first required to prove an overt act which it did not do; (3) testimony of such threats was prejudicial to the plaintiff in error; (4) no witness on the part of the State testified positively who fired the first shot; (5) certain testimony on the part of the plaintiff in error was in conflict with that offered by the State, and (6) the State Attorney on cross-examination was permitted to discredit the testimony of some of the witnesses of the plaintiff in error.

By the well-established rule of criminal evidence, testimony of threats made by the accused or by a co-defendant in the presence of the accused, prior to the killing, is always relevant to show malice; or, when made long before, to show deliberation and premeditation. Johns v. State, 46 Fla. 153, 35 South. Rep. 70; Jones v. State, 66 Fla. 79, 62 South. Rep. 899; Ward v. State, 75 Fla. 756, 79 South. Rep. 699; 13 R. C. L. 924; Underhill's Crim. Ev. (3rd ed.) 1653. It is immaterial that the threats were not directed against the deceased individually. Harrison v. State, 79 Ala. 29; Williams v. State, 147 Ala. 10, 41 South. Rep. 992; Glover v.

State, 200 Ala. 384, 76 South. Rep. 300; Underhill's Crim. Ev. (3rd ed.) 731. The relevancy of threats depends largely upon the light they shed on previous malice or premeditation. Hence their remoteness in time is no objection to their reception, though it may and indeed must be considered in determining their weight as evidence of existing intent. Hodge v. State, 26 Fla. 11, 7 South. Rep. 593; Everett v. State, 62 Ga. 65; Patterson v. State, 171 Ala. 2, 54 South. Rep. 696; Ex parte State, 181 Ala. 4, 61. South. Rep. 53; Underhill's Crim. Ev. (3rd ed.) 733, citing many cases; 13 R. C. L. 924; State v. Hoyt, 46 Conn. 330; Rains v. State, 88 Ala. 91, 7 South. Rep. 315; Clemmons v. State, 43 Fla. 200, 30 South. Rep. 699; Childers v. State, 74 Fla. 288, 77 South. Rep. 99.

The threats, evidence of which is here complained of, were made from fourteen months to within several months of the homicide. Objections to such evidence on the ground of remoteness was not therefore well founded and it was prejudicial only to the extent that any other legal evidence which tends to prove guilt is prejudicial. Evidence of such threats was proper to go to the jury who determined their weight as evidence. As to who was the aggressor or who fired the first shot, as well as all other conflicts in the testimony, it was the sole duty of the jury to determine. The rule as to proving an overt act applies under certain limitations when the defendant attempts to introduce evidence of threats made against him by the deceased, but that rule has no application in this case. Underhill's Crim. Ev. (3rd ed.) 726.

The eighth assignment of error charges that the trial court erroneously permitted the jury to carry with them to the jury room the coat and vest of the deceased, the revolvers of plaintiff in error and deceased, and the plat showing the school building and various other points testified to, all of which articles had been introduced in evidence.

It is the general practice, both in civil and criminal cases, in the absence of statutory provision to the contrary, to permit the jury to take to the jury room on their retirement, all articles introduced in evidence which, in the opinion of the trial judge, will aid the jury in their deliberations; what articles should be so taken being ordinarily in the discretion of the trial court. Phillips v. State, 156 Ala. 140, 47 South. Rep. 245; Hopkins v. State, 9 Okla. Cr. 104, 130 Pac. Rep. 1101, Ann. Cas. 1915B 736, Note 742, citing many cases.

It is well settled that a new trial will not be granted because jury was permitted to carry with them to the jury room articles introduced in evidence which would aid them in their deliberations unless it can be shown that the jury received testimony therefrom other than that adduced at the trial, and that such additional testimony was prejudicial. Vasquez v. State, 54 Fla. 125, 44 South. Rep. 739; Bell v. State, 32 Tex. Cr. 436, 24 S. W. Rep. 418; Spencer v. State, 34 Tex. Cr. 238, 30 S. W. Rep. 46, 32 S. W. Rep. 690; State v. Dixon, 131 N. C. 808, 42 S. E. Rep. 944; People v. Page, 1 Idaho 102; People v. Gallagher, 75 App. Div. 39, 78 N. Y. S. 5, affirmed in 174 N. Y. 505, 66 N. E. Rep. 1113; People v. Hower, 151 Cal. 638, 91 Pac. Rep. 507; State v. Teale, 154 Iowa 677, 135 N. W. Rep. 408. All cases cited on this point except the Idaho and Iowa cases are similar to the case at bar, in that clothing and guns were permitted to be carried by the jury to the jury room.

In the case at bar all the articles were properly introduced in evidence; the guns were introduced to show their condition immediately following the shooting; the coat and vest were introduced to show the powder burns, number of bullets that struck the deceased and the position he was in to plaintiff in error at the time of the fatal encounter. The Plat was introduced to show the layout of the school building and grounds, the position of the witnesses and the position of the deceased and plaintiff in error. These articles

were carried to the jury room by order of the trial court at the request of the jury, and there is no suggestion or intimation that they were used by the jury in their deliberations for any other purpose than to verify or explain the reasons for their introduction in evidence as herein stated. In the absence of any showing that they were otherwise used, or that additional and prejudicial testimony was offered the jury by the presence of these articles in the jury room we approve the rule announced in the foregoing cases, that no error was committed in allowing them to be there.

The tenth, eleventh, twelfth and thirteenth assignments of error are predicated on the refusal of the trial court to grant a new trial on the showing of the disqualification of the jurors B. M. Stephens and D. A. Fulwood.

The showing of disqualification of these two jurors was brought to counsel for plaintiff in error after the return of the verdict and discharge of the jury. As to the juror Stephens such showing was based on the affidavit of one Ethel Stephens which was to the effect that she would not attempt to give the exact language used by B. M. Stephens, but that in a conversation with her shortly after Lamb killed Gates he (Stephens) stated in effect that he was of the opinion that Gates was in the right and Lamb in the wrong. As to the juror Fulwood, the showing of disqualification was based on the affidavits of R. H. Holsapple and W. M. Tison, which were to the effect that the said Fulwood had heard some of the witnesses for the State testify in the preliminary hearing of Lamb for the killing of Gates and from said testimony he, the said Fulwood, had formed and expressed an opinion as to the guilt of the defendant Lamb.

On *voir dire* examination to test their qualification for jury duty, both Stephens and Fulwood were shown to possess every legal prerequisite to sit as jurors in the trial of Lamb, and were accepted. Before disposing of the matter of their alleged disqualifications on motion for new trial the

court heard testimony in support thereof and B. M. Stephens flatly denied ever having made any such statement to Ethel Stephens as she charged him with making to her, or in fact ever having had any conversation with her about the Lamb case. D. A. Fulwood also testified that he had never had any unfriendly feeling against Lamb, that he had known him for many years and had no recollection of ever having formed or expressed any opinion to any one as to his guilt or innocence of the charge of killing Gates. On the bare record of the evidence as to the disqualification of either Stephens or Fulwood is not at all convincing. The trial court, after hearing and observing the witnesses in support of their alleged disqualification, pronounced them qualified, and we think such questions must necessarily be left largely to the trial judge who has opportunity to know the witnesses and judge of their credibility. Irvin v. State, 19 Fla. 872; Yates v. State, 26 Fla. 484, 7 South. Rep. 884; People v. Taing, 53 Cal. 602; People v. Vasquez, 49 Cal. 560.

The trial judge believed the statements of Stephens and Fulwood with reference to their qualifications as jurors rather than the affidavit and testimony of Ethel Stephens, Tison and Holsapple, supporting the charge of their disqualification and under the circumstances as shown by the evidence we are unable to say that the trial judge's conclusion in the matter was not correct. On the record the effort to disqualify Stephens fell flat; and that to disqualify Fulwood appears to have been an afterthought on the part of friends of Lamb and distant relatives of such friends who appeared very much interested in his (Lamb's) acquittal. Tison, the man who was the most interested in the disqualification of Fulwood, knew of his alleged disqualifications before the trial came on, saw Fulwood qualify as a juror, sat in the court room through the trial, and then after the verdict was returned and the jury discharged, for the first time makes known to Lamb's counsel his knowledge of Ful-

wood's disqualification. Taken in connection with the facts brought out in evidence it is remarkably strange that he should have waited so long to charge Fulwood with being disqualified, and for this and other reasons apparent on the record, we think the finding of the trial court sets this question at rest.

Trial by jury is an institution of ancient and somewhat doubtful origin, though as now conceived it is a product of the Anglo-Saxon mind worked out along the shore of the North Sea. Through the long history of its development, like all other institutions, its nature and function have changed materially. While early regarded as a right, it was first guaranteed as such to the English people by Magna Charter. Our English forefathers brought that right to this country from the mother country and incorporated it into the constitution of our country and into the constitution of every State composing our country. It has been written on the heart of and become a part of the birthright of every free American citizen. To the courts of the land and free citizens alike trial by jury has been an object of deep and abiding interest, and any encroachment on this right has been viewed by them with alarm.

For these reasons and many others we believe that every juror should come to the investigation of each case free from any preconceived impression of it whatever; but when the jury has duly qualified and been accepted, to allow parties after the close of the trial of a cause to come in and file *ex parte* affidavits and thus set at naught its finding, in our judgment would be equivalent to doing away with jury trials. With all the modern means of intercourse and communication now available to our people, it would be quite impossible to bring together twelve men for the trial of a cause like this who had not read or heard some part of the evidence or facts discussed, and from such as he has read or heard he may have some opinion, though not necessarily

a fixed one that would not yield to competent evidence, as to the guilt or innocence of the one on trial; but when such juror in the presence of God and his country takes a solemn oath to try the issue according to all the evidence and facts presented, and meets every other requirement of the law to sit as a juror in said cause, and the trial judge, after having fully examined into all facts constituting his alleged incompetency and in the exercise of a sound discretion has pronounced him qualified, if he is not qualified then it would be extremely difficult if not impossible to qualify a jury in most cases under our system.

We have read carefully the cases cited by plaintiff in error in support of the alleged disqualification of Stephens and Fulwood and it is not made to appear on the law or the facts that either of them was prejudiced in respect to Lamb's case, or that they improperly withheld such fact before acceptance on the jury, or that they gave false answers to opinions on *voir dire* examination, or that they were in any respect disqualified to sit as jurors in said cause..

The fourteenth, fifteenth, sixteenth and seventeenth assignments of error are grounded on the overruling of the motion for a nw trial.

These assignments go to the sufficiency of the evidence to support the verdict. Lamb, the plaintiff in error, admits the killing of Gates, but claims self-defense, and contends that his plea of self-defense is supported by the testimony of seven witnesses who saw the difficulty from start to finish, and all testified that Gates was the aggressor and fired the first shot. The testimony, it is contended, is also corroborated by the testimony of the witness Dunham. Plaintiff in error also contends that since no witness for the State directly contradicted his testimony as to who fired the first shot, he is entitled to reversal under authority of Holton v. State, 87 Fla. 65, 99 South. Rep. 244. In the Holton case

the judgment of conviction was reversed solely because "there was no fact or circumstance in the evidence nor testimony of witness to contradict the defendant's account of the transaction," while in the case at bar there was a great deal of testimony which contradicts or tends to contradict defendant's account of the transaction. The Holton case is not therefore in point with, nor is it authority in this case.

Considered merely on the numerical force or weight of the evidence this would probably be a case for reversal, but in resolving the question of who was the aggressor, who provoked the difficulty, or the motive, purpose and intent of the plaintiff in error and deceased in being on the school grounds at the scene of the fatal encounter, the jury are to determine; and in doing so they must be governed by all the testimony. They are judges of weight and sufficiency of the evidence and the credibility of the witnesses, and if they cannot reconcile conflicting evidence they may disregard that part they do not believe and base their judgment solely· on that they do believe.

The evidence on all material points in this case was conflicting in the extreme. The case was ably presented on both sides at bar and in brief. In fact it would not be possible in a single case to bring together an array of counsel in whose integrity and ability this Court has a higher regard, though their theory of the case was as· widely at variance as the testimony was conflicting. When splendid lawyers who heard the testimony, . watched the witnesses depose, and participated in the whole scene enacted in the court room vary as widely as the poles on their interpretation of the evidence, it would be utterly futile on the face of the cold record for the Court to enter into a lengthy discussion of it with a view of shedding any new light on the situation. We have analyzed the record with great care and the conclusion is inescapable that when the jury came to consider and make up its verdict they disbelieved in the

main the testimony offered by the defendant and believed that offered by the State. They had a right to do this, and their verdict is amply supported by the collective testimony of Mrs. Hall, Vernon, Saltz, Nancy Deeker, Tommy Walker, Barney Willis and Albert Ozburn. There is no showing whatever that the jury was influenced by considerations outside the record; the trial Court refused to disturb the verdict, and we find no error in his judgment. Hobbs v. State, 77 Fla. 228, 81 South. Rep. 444; Drayton v. State, 78 Fla. 254, 82 South. Rep. 801; Gadsden v. State, 77 Fla. 627, 82 South. Rep. 50.

All other assignments of error are predicated on the refusal of the trial court to give instructions requested by the defendant.

All instructions refused have been examined carefully in the light of the facts in this case. Without being specific we think some of the requested charges were not warranted by the law or the facts and were properly refused. Others were properly refused because the law of the case was fully covered by the general charge and the requested charges that were given. No charge is warranted that does not state the law of the case correctly and is not predicated on the facts in evidence. Miller v. State, 76 Fla. 518, 80 South. Rep. 314; Seaboard Air Line Ry. v. Kay, 73 Fla. 554, 74 South. Rep. 523; Farnsworth v. Tampa Electric Co., 62 Fla. 166, 57 South. Rep. 233.

The record disclosing no reversible error, the judgment of the Court below is affirmed.

Affirmed.

BROWN, C. J., AND WHITFIELD, ELLIS AND STRUM, J. J., concur.

BUFORD, J., disqualified.

ON PETITION FOR REHEARING.

TERRELL, J.

Petition for rehearing denied.

1. At the time A was selected as a juror to try B he stated that he had no recollection of having formed or expressed an opinion as to B's guilt or innocence, that he, A, heard the evidence of two witnesses at the preliminary hearing and was not positive, but did not remember having stated from what he heard that B was guilty, that at the time he was sworn as a juror he had no opinion as to the guilt or innocence of B and that he had never at any time had any hard feeling against B. On voir dire examination to determine his qualification as a juror A testified that he had read a detailed published account of the killing of C by B, but that he could sit as a juror in his case and try him fairly and impartially and render verdict according to the law and the evidence. If the trial court is satisfied of the truth of such statements they rebut any charge of A's disqualification.

2. A person called as a juryman may have formed an opinion based upon rumor or upon newspaper statements, but if he has expressed no opinion as to the truth of the newspaper statements he is still qualified as a juror if he states that he can fairly and impartially render a verdict thereon in accordance with the law and the evidence, and the court shall be satisfied of the truth of such statements.

Petition for Rehearing denied.

*Thomas Palmer, Knight, Thompson & Turner, W. B. Dickenson, John B. Singletary, Dewey A. Dye and John Taylor,* for Plaintiff in Error;

*Rivers Buford,* Attorney General, *Marvin C. McIntosh,* Assistant Attorney General, *Herbert S. Phillips,* and *O. K. Reaves,* for Defendants in Error.

TERRELL, J.—Petition for rehearing is based on the sufficiency of the evidence to support the vedict and the alleged disqualification of the juror D. A. Fulwood. We have carefully examined all the evidence again, and reaffirm what was said in the main opinion on this point.

In addition to what was said in the main opinion as to the disqualification of D. A. Fulwood, we might state that the record shows that he (Fulwood) at the time he was selected as a juror had no recollection of having formed or expressed any opinion as to Lamb's guilt or innocence; that he heard the evidence of two witnesses at the preliminary hearing and was not positive, but did not remember having stated from what he heard that Lamb was guilty; that at the time he was sworn as a juror he had no opinion as to the guilt or innocence of Lamb, and that he had never at any time had any feeling against Lamb. On *voir dire* examination to determine his qualification as a juror Fulwood testified that he had read a detailed published account of the killing of Gates by Lamb, but that he could sit as a juror in his case and try him fairly and impartially and render a verdict according to the law and the evidence. The trial court was satisfied of the truth of these statements, and it is our opinion that they rebut any charge of Fulwood's disqualification.

In Spies v. State of Illinois, 123 U. S. 131, text 168, 8 Sup. Ct. Rep. 21, 22, the Supreme Court of the United States held that although a person called as a juryman may have formed an opinion based upon rumor or upon newspaper statements but has expressed no opinion as to the truth of the newspaper statements, he is still qualified as a juror if he states that he can fairly and impartially render a verdict thereon in accordance with the the law and the evidence, and the court shall be satisfied of the truth of such statement. It is not a test question whether the juror will have the opinion which

he has formed from newspapers changed by the evidence, but whether his verdict will be based only upon the account which may here be given by witnesses under oath. Hopt v. Utah, 120 U. S. 430, 7 Sup. Ct. Rep. 614. In Spies v. State of Illinois, *supra*, a stronger showing was made to disqualify the two jurors there challenged than was made in the case at bar, yet the Supreme Court of Illinois and the Supreme Court of the United States held them qualified. O'Connor v. State, 9 Fla. 215; Montague v. State, 17 Fla. 662; Denham v. State, 22 Fla. 664; English v. State, 31 Fla. 340, 12 South. Rep. 689; Olive v. State, 34 Fla. 203, 15 South. Rep. 925, Brown v. State, 40 Fla. 459, 25 South. Rep. 63; Marlow v. State, 49 Fla. 7, 38 South. Rep. 653; Melbourne v. State, 51 Fla. 69, 40 South. Rep. 189.

Petition for rehearing denied.

BROWN, C. J., AND WHITFIELD, ELLIS, AND STRUM, J. J., concur.

BUFORD, J., disqualified.