463 So.2d 542 (1985)
Elbert Roy SMITH, Appellant,
v.
STATE of Florida, Appellee.
No. 83-1501.
District Court of Appeal of Florida, Fifth District.
February 14, 1985.
James B. Gibson, Public Defender, and Michael S. Becker, Asst. Public Defender, Daytona Beach, for appellant.
*543 Jim Smith, Atty. Gen., Tallahassee, and Evelyn D. Golden, Asst. Atty. Gen., Daytona Beach, for appellee.
PER CURIAM.
Appellant was charged with, tried for and convicted of two counts of sexual battery, one count of armed robbery, one count of burglary of a dwelling while armed and one count of shooting into an occupied building. He contends that because the trial court refused to excuse several prospective jurors for cause, he was compelled to exercise all his peremptory challenges to excuse those proposed jurors, that he was then compelled to accept a juror he would not have retained because his peremptory challenges were exhausted, and that he was thus denied a fair trial. We reverse for a new trial.
During the voir dire examination of prospective jurors, it became apparent that several of them had read an article in the local daily newspaper about the impending trial and the fact that it was a re-trial following the reversal of an earlier conviction.[1] We find no error in the trial court's determination that prospective jurors Motley and Kelly were qualified, after hearing them state that although they had read the article, they could not remember the details of the article and had not been influenced by it. Prospective juror Gullett felt that he did not have an open mind towards the crime of sexual battery, and although the court denied the defendant's request to excuse this venireman for cause, the State excused him on a peremptory challenge, so the defendant demonstrates no prejudice, even if the trial court was wrong.
We do find, however, that defendant's challenge for cause to prospective juror Thomas should have been granted. Thomas was eventually excused by defendant on a peremptory challenge, and the trial court denied defendant's motion that he be granted additional peremptory challenges when his peremptories were exhausted.[2] Ms. Thomas, a reporter for the Palatka Daily News, was aware of the newspaper article, and she revealed this fact when the panel was asked whether any of them had read or heard anything about the case. She indicated at that time that she had expressed an opinion about the case after reading the article, and she wasn't sure that she could listen to the evidence and the instructions of the court free from the influence of what she had read. Upon further questioning by the court she said she would try to be fair and impartial. At the request of counsel, Ms. Thomas and venireman Kelly and Gullet were questioned individually, outside of the presence of each other and the other panel members.[3]
*544 In Singer v. State, 109 So.2d 7 (Fla. 1959) the Supreme Court of Florida stated that a juror's statement that he can and will return a verdict according to the evidence submitted and the law announced at the trial is not determinative of his competence, if it appears from other statements made by him or from other evidence that *545 he is not possessed of a state of mind which will enable him to do so. The court stated the rule to be as follows:
Further we do not feel that the true test of the fixedness of an opinion in the mind of the juror is to be determined by whether the opinion will readily give way to the evidence. As pointed out by Justice Buford in Powell v. State, 131 Fla. 254, 175 So. 213, supra, at page 216:
"* * * The accused, guilty or innocent, is entitled to the presumption of innocence in the mind of every juror until every element of the offense charged against him has been proved by competent evidence adduced upon the trial beyond a reasonable doubt. This is not accomplished when a juror is taken upon a trial whose mind is in such condition that the accused must produce evidence of his innocence to avoid a conviction at the hands of that juror. * * *"
It is not enough that an opinion will readily yield to the evidence, for evidence of innocence is not required to be presented by the accused.
We think the true test to be applied should be not whether the juror will yield his opinion, bias or prejudice to the evidence, but should be that whether he is free of such opinion, prejudice or bias or, whether he is infected by opinion, bias or prejudice, he will, nevertheless, be able to put such completely out of his mind and base his verdict only upon evidence given at the trial. Lamb v. State, [90 Fla. 844], 107 So. 530, supra, at page 535, citing Hopt v. People, 120 U.S. 430, 7 S.Ct. 614, 30 L.Ed. 708.
Id. at 24.
Here, the prospective juror conscientiously did as much as she could to be fair, but she just as conscientiously tried to tell everyone that she might not be able to put aside the opinion she had formed based on what she knew about the case. When the court asked her if, notwithstanding this knowledge she could afford the defendant the presumption of innocence the law entitles him to, she replied: "Not knowing what I think I know at this time, because I would question, you know, what happened." As the court said in Singer:
It is difficult for any person to admit that he is incapable of being able to judge fairly and impartially. We think Mr. Shaw on voir dire examination did as much as he could to honestly express that he was of such a state of mind, consciously or subconsciously, that he was not sure he could render a verdict without being influenced by the opinion he had formed from what he had read and heard about the case and because of knowing decedent's family.
Id. at 24. Here, Ms. Thomas candidly admitted that what she knew because of the articles might affect her view of the evidence, and might make her unable to afford the defendant the presumption of innocence to which he is entitled by law. The distinct implication which arises from the dialogue between Ms. Thomas and the trial judge is that defendant's evidence might persuade Ms. Thomas to change her opinion, but of course, defendant is not obligated to present any evidence.
Although this juror did not sit because the defendant excused her on a peremptory challenge, it is error for a court to force a party to exhaust his peremptory challenges on persons who should be excused for cause, since it has the effect of abridging the right to exercise peremptory challenges. Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965). See also, Leon v. State, 396 So.2d 203 (Fla. 3d DCA 1981). Where there is any reasonable doubt as to a juror's possessing the requisite state of mind so as to render an impartial verdict, the juror should be excused. Singer v. State, supra. The dialogue with Ms. Thomas clearly shows such reasonable doubt, and she should have been excused for cause.
Because a new trial is required, we will dispose of the other points raised by appellant. He contends that the trial court should have directed a verdict in his favor on the charge of shooting within an occupied dwelling, because the evidence showed that he shot at the victim's dog, not at the *546 dwelling itself. He relies on Golden v. State, 120 So.2d 651 (Fla. 1st DCA 1960) as support for his position. Because the statute has been amended since the Golden decision so that it now proscribes shooting at, within or into a building, we have chosen not to follow that case. See Skinner v. State, 450 So.2d 595 (Fla. 5th DCA 1984). A defendant may be convicted under this statute when he intentionally shoots at someone or something within the building as well as when he shoots at or into the building itself. Thus the trial court did not err in refusing to direct a verdict for defendant on this charge.
Appellant also contends that the trial court erred in imposing consecutive mandatory minimum sentences for each of the crimes for which defendant was convicted because the multiple offenses arose out of a single episode. He relies on Palmer v. State, 438 So.2d 1 (Fla. 1983) as support for that position. While Palmer did reverse the imposition of consecutive mandatory minimum sentences in that case because the separate robbery victims were all robbed at the same time and place, the court specifically observed that it was not prohibiting consecutive mandatory minimum sentences for offenses arising from separate incidents occurring at separate times and places. 438 So.2d at 4. Here, each crime was separate, occurring after a distinct time interval. Each sexual battery occurred at a different place. The intent to commit the robbery does not appear to have been formed until long after the sexual batteries took place. The shooting of the dog, however, does appear to be the direct continuation of the burglary, committed as soon as defendant entered the premises, so under Palmer, it would be error to impose mandatory minimum sentences for both of these crimes. Otherwise, we find no error in the imposition of the sentences.
The judgments of conviction are reversed, and the cause is remanded for a new trial.
REVERSED and REMANDED.
COBB, C.J., and DAUKSCH and ORFINGER, JJ., concur.
NOTES
[1] See Smith v. State, 434 So.2d 18 (Fla. 5th DCA 1983).
[2] Fla.R.Crim.P. 3.350(e) grants the trial court discretion to grant additional peremptory challenges when the information contains two or more counts or where, as here, two or more informations are consolidated for trial. See also, Johnson v. State, 222 So.2d 191 (Fla. 1969).
[3] At the risk of overburdening the opinion, here follows the entire individual voir dire of Ms. Thomas.

THE COURT: [M]r. Zolezzi [defense counsel], you may inquire of 
Well, let me ask first, do you recall what you read in the article?
MS. THOMAS: Do you want me to go ahead and state the portion that 
THE COURT: Yeah. Tell me what you remember about it.
MS. THOMAS: Three-year sentencing portion, and three hundred and sixty-five years, or something like that, stood out with me from that article 
THE COURT: All right.
MS. THOMAS:  and the fact that he was being brought back.
THE COURT: All right. Now, what did that mean to you?
MS. THOMAS: It meant that you have a person that's already been sentenced before 
THE COURT: Yeah?
MS. THOMAS:  and that, apparently that you have some previous doubt as to whether or not he's committed 
THE COURT: And that means he's got to start over again from scratch, right?
MS. THOMAS: I don't know. When he gets three hundred and sixty-five years, that's, that's 
THE COURT: No, wait a minute now. That hasn't got anything to do with the sentence, hasn't got anything to do with  What I'm asking you is what your state of mind is, you know, really, with regard to it.
MS. THOMAS: Okay.
THE COURT: Now, would what you read in the article influence you to the point that you couldn't put it aside and listen to the evidence that comes here and give the Defendant and the State a fair trial in this proceeding?
Now whether the Defendant had ever been in Court before, whether there was ever any doubt, whether he got one day or a thousand years, hasn't got anything to do with it.
Can you afford him that presumption of innocence the law entitles him to?
MS. THOMAS: Not knowing what I think I know at this time, because I would question, you know, what happened.
THE COURT: Well, what do you think you know?
You see, what you've got to do in any trial is listen to the evidence that comes here in the Courtroom 
MS. THOMAS: Right.
THE COURT:  and the law as the Judge instructs it. Now 
MS. THOMAS: What I'm saying, I could, you know, based on the evidence that we take here, sure, I could take that and go in and form an opinion from what's presented here; but I do have something previous, that I think 
THE COURT: I understand.
MS. THOMAS:  that I think I know previously that could affect 
THE COURT: But if it came down to the fact that the State in its proof did not prove the case beyond a reasonable doubt, could you find the Defendant not guilty in this case, if the State didn't prove it?
MS. THOMAS: If it was the evidence, I guess I wouldn't have any choice.
THE COURT: All right. If the State proved it beyond a reasonable doubt, would you find him guilty?
MS. THOMAS: Yes, sir?
THE COURT: Okay. If you can do that, then you couldn't be any more fair as far as the system is concerned.
Mr. Zolezzi: you may inquire.
MR. ZOLEZZI: Do you recall the date of the article that you read?
MS. THOMAS: I read something this week, because I remember skimming the newspaper, looked at my news articles 
MR. ZOLEZZI: Uh-huh.
MS. THOMAS:  and I remember one that was written by a co-worker of mine, and I looked at it and it was something about  I don't know if it was in the headline  about him being brought back, the case.
MR. ZOLEZZI: By "brought back", what do you understand that to mean?
MS. THOMAS: To court. Probably the fact that he, his defense has appealed, you know, something, some technicality of the law or something, and get him back into court, that something went wrong in the first case.
MR. ZOLEZZI: Is that the recollection that you have?
MS. THOMAS: That's not specifically from the article.
The thing that stuck out with me the most is the part, the portion of sentencing.
MR. ZOLEZZI: Do you recall anything else in the article about Mr. Smith himself other than what he was charged with or the prior sentencing, as to what he, his status himself may have been at the time?
MS. THOMAS: No, just the sentencing itself because it received a lot of attention.
MR. ZOLEZZI: Can you set that aside and not discuss it whatsoever with the other jurors and not consider it in rendering your verdict in this case?
MS. THOMAS: Now given the instructions that we had not discuss it, you know, sure; you know, I don't want to violate anything.
THE COURT: I think what he's saying, if you had to go back in the jury room and decide the case, in the course of that could you eliminate from discussion with the other jurors the fact that you read something and what you read and not talk to them about it?
MS. THOMAS: If the State had proved that, you know, in my mind that he was guilty of something, I might refer back to what had happened previously. I'm not going to say that I wouldn't.
MR. ZOLEZZI: If you were instructed not to?
MS. THOMAS: Well, If I was instructed not to, of course not.
MR. ZOLEZZI: I have no further questions, Your Honor.
THE COURT: Do you have anything you want to ask her?
MR. ZOLEZZI: Your Honor, may I ask one more?
THE COURT: Yeah.
MR. ZOLEZZI: With the information that you know of and the sentence that you've told us about, you still indicate that you could decide this case in a fair and impartial manner?
MS. THOMAS: I would try based on the information that's given here, you know, in this Courtroom.
MR. ZOLEZZI: Thank you.
THE COURT: We can ask no more of any juror.