J. N. Roof, Appellant, vs. Chattanooga Wood Split Pulley Company, Appellee.

1. In an action of replevin the right to the possession of the property is essentially involved, and the party entitled thereto must be the real plaintiff in the suit, and can not maintain it for the use of another. If a party who sues for the use of another has the legal title and is entitled to recover in his own name, the fact that a usee's name is inserted in the pleadings should not alone defeat recovery. The usee may be considered as no party to the action and his name treated as surplusage.

2. The endorsement of a guaranty of payment by the payee of a note containing a stipulation that a chattel therein described should remain the property of the payee until the note was paid, does not of itself vest title to such chattel in the endorsee, so as to enable him to replevy the same; but the payee of the note after defaults in payment may maintain such suit.

3. Parol evidence is inadmissable to contradict or vary the terms of a valid written instrument, but this rule applies only to the parties to the contract or their privies, and not to a stranger thereto.

4. Where the terms of a contract are shown by a writing admitted in evidence it is improper to permit a witness to detail the terms of such contract. If it is shown, however, that the oral evidence of the witness as to the terms is correct as exhibited by the writing, and there is no dispute as to the correctness of

JUNE TERM, 1895.    285

Roof v. Chattanooga Wood Split Pulley Co.—Argument of Counsel.

the terms in the writing, there is no reversible error in admitting such oral evidence.

5. If under an agreement in writing to sell personal property the title is reserved to the seller until the purchase money is paid, the purchaser does not acquire title until the performance of the condition; and such an agreement is valid as against subsequent *bona fide* purchasers for valuable consideration without notice.

Appeal from the Circuit Court for Hamilton county.

The facts in the case are stated in the opinion of the court.

*B. B. Blackwell* and *D. B. Johnson,* for Appellant.

APPELLANT'S BRIEF.

This was a suit of replevin, brought by the appellee in the Circuit Court of Hamilton county against appellant for the recovery of a certain flooring machine. The plaintiffs (appellee) sold the machine in question to the Muskegon Lumber Company, taking notes therefor, with stipulations therein that title to said machine should not vest in the purchaser until the machine was paid for. Defendant (appellant) purchased the machine for value and without notice from Jennings and Jennings from the Muskegon Lumber Company, neither knowing of the existence of the contract. Plaintiffs conferred the contracts to the First National Bank of Chattanooga, Tennessee, to secure a loan, the machine not being paid for. The plaintiffs, Chattanooga-Wood-Split-Pulley-Company, a corporation, brings this suit for the use of the bank for the recovery of the machine. Upon the trial the plaintiffs, to maintain their suit to recover the machine, offered in evidence the notes given for the machine, reserving title in the vendor; the notes or con-

tracts are signed "Muskegon Lumber Company Ry.—
R. F. Martingale." Defendant objected to the intro-
duction of these papers on several grounds. The first
objection presents this proposition: Can the Chatta-
nooga-Wood-Split-Pulley-Company, the normal plain-
tiffs, maintain a suit of replevin for the use of the
holder of these notes, the Chattanooga bank, the real
plaintiffs? This same proposition is presented by the
following ground for a new trial, the fifth assignment
of error: "The verdict of the jury is contrary to the
evidence in said cause. These two propositions will
be considered together.

These contracts which the court allowed to be read
in evidence, showed that they were endorsed to the
Chattanooga bank, and this transfer being in writing,
was an absolute assignment, which could not be lim-
ited or controlled by any verbal agreement or under-
standing between the parties, and the evidence, in-
stead of showing that the plaintiffs were entitled to
the possession of the property, show most conclusive-
ly that the plaintiffs were not entitled to its posses-
sion; hence could not recover.

It is well settled by the authorities that the plaintiffs
in replevin must be entitled to the immediate posses-
sion of the property, sued for in order to recover, and
that replevin can not be *maintained for the use of
another*. See Myer vs. Warner, 1 South. Rep. p. 837
and cases there referred to. See also Horton vs. Vowell,
4th Heisk (Tenn.) page 662.

The second objection to this contract is, that it was
not proven to be the contract of the Muskegon Lum-
ber Company. It is proven by plaintiff that the Mus-
kegon Lumber Company was a corporation, and this
being so, the plaintiffs should have shown at least

*prima facie* that R. F. Martingale was authorized by the rule of the company to sign such contracts, or a seal or some evidence of authority should accompany the contract.

But a third and more serious objection to the reading of these papers in evidence is the variance in the description of the property; the declaration describes the property as one "E. & B. Holmes Flooring Machine," while the contracts describe the property as one "S. A. Woods Flooring Machine." To overcome this variance the court allowed the witness to contradict the plain language of these contracts, which was excepted to and constitutes the second assignment of error. The simple statement of the proposition, it seems to me, is all the argument necessary. See 1 Greenleaf Ed. (13-Ed.) sec. 275-6-81; Edward Perry, Governor, vs. Woodberry, 26 Fla. 84.

The third assignment of error is: "The court erred in admitting oral statements of the contracts, which were in writing."

The above authorities clearly sustain this objection. Where the writing entered into by the parties is the sole *repository* of the words and intention of the parties, no verbal statement will be received to show a different intention.

The fourth assignment of error is: "The court refused to allow the defendant to show that he was an innocent purchaser for value without notice." Is a conditional sale of personal property, reserving title in the vendor, good against *bona fide* purchasers, without notice? This question has never been decided in this State. The case of Jackson, Sharp Co. vs. Holland, 14 Fla., 385. The defendant by his answer admits that he paid no present value or consideration for the cars, but simply credited the amount

of his bid upon the execution." It is too well settled to need authority that one who purchases property on pre-existing debt is not an innocent purchaser for value—to be such purchaser, it must be for present value—hence the above case does not apply to the one before the court. The case of Campbell M'f'g. & Co. vs. Walker, 22 Fla., 412, does apply. In that case Walker was simply the assignee of the vendor, who had made an assignment for the benefit of his creditors, and in the close of the opinion the court says: "He is in no sense a *bona fide* purchaser. I am compelled to admit that the decisions of most of the States support the ruling of the Circuit Court. See Am. and Eng. Ency. of Law, vol. 3, p. 436, sec. 13, and the cases cited, pro. and con. See Benj. Sales (Corbin Ed.) I Vol. 405, sec. 437, and extensive notes; 37 Am. Rep. 661; Harkess vs. Russell, 118 U. S. Rep. 663.

Upon a close examination of the cases which sustain the view that the vendor's right is good as against *bona fide* purchasers, it will be seen that in most instances the parties were purchasers on pre-existing debts, or are assignees of the vendee, just as in the case of Campbell Mfg. Co. vs. Walker, in 22nd Fla., above referred to, or the parties were holding under contract for rent, with privilege of purchase, or holding on trial with privilege of purchase. In such cases the principle for which I contend does not apply. It seems to me that the great mistakes the courts have made is in not distinguishing between sales and bailments and fraudulent possessions. It is impossible for the business of the country to be carried on without bailments of most every conceivable form. We are compelled to trust to others to take care of and preserve and transport our property; hence it is contrary to

public policy to say that a bailee may sell the property intrusted to him and give a good title. Such a holding would place a premium on fraud and destroy confidence. It is impossible in the nature of things for a person to stand guard over his property, his cattle running at large; hence it is against public policy to say that a person can steal a horse and then sell it and give a good title. Such a holding by the court would offer a premium on larceny and destroy the maxim *caveat emptor*. It would not do to say that a person entrusted with negotiable paper, that if he sells the same he can not give a good title. The courts all hold that he can give a perfect title, and why? on the grounds of public policy. To hold otherwise would destroy the confidence of the public in negotiable paper and hamper commercial transactions. In the cases of conditional sales the authorities all sustain the exception in favor of negotiable paper. A conditional sale, proper, is not a bailment. It is not a case of fraudulent possession, but a sale, the vendor voluntarily parts with the possession of his property. He is not compelled to sell on credit; he has the right to exact full payment before delivery, or if he must sell on a credit, he has a right to take a chattel mortgage back and put it on record, and if he allows his property to go into the possession of another under a conditional sale to be used by the vendee as his own, it seems to me, that every dictate of reason and justice would demand that his folly or misplaced confidence should not be visited upon the innocent purchaser. To say the principle *caveat emptor* applies is a greater absurdity still, for in most instances the vendor lives a thousand miles away, and to whom can the pur-

chaser apply for information but to the dishonest vendee, whom the vendor has seen fit to trust. I believe in following precedents, nothing is more dangerous than a departure, but I do not believe in following precedent for precedent's sake, if it is not supported by reason and justice, if, on the other hand, we have precedent, sound in common sense and justice, though less numerously supported by the cases cited.

No Appearance for Appellee.

MABRY, C. J.:

The appellee, a corporation under the laws of the State of Tennessee, instituted a suit of replevin, for the use of the First National Bank of Chattanooga, against appellant to recover possession of personal property described as "1 E. & B. Holmes Flooring Machine," which it is alleged he wrongfully withheld from plaintiff. The value of the machine is fixed at $850, and the affidavit states that it had not been taken for any tax assessment or fine levied by virtue of any law of the State, nor seized under any execution or attachment against the goods and chattels of plaintiff liable to execution. The declaration filed is in the usual form in such actions and the plea was not guilty.

To maintain the action plaintiff offered in evidence five contract notes bearing date August 23rd, 1890, and due respectively three, five, seven, nine and eleven months after date. All the notes are alike except as to dates of payment. The first one is as follows:

"$170.    JASPER, FLA., Aug. 23, 1890.

"Three months after date we promise to pay to the order of the Chattanooga-Wood-Split-Pulley-Company one hundred and seventy dollars, payable at Merchants' Bank of Valdosta, Ga., with interest at 8

per cent. from date, without relief from appraisement, stay or exemption laws. The drawer and endorser severally waive presentment for payment, protest and notice of non-payment and protest of this note, and it is agreed by the makers, endorsers and payees hereof that this note is given in payment for one S. A. Woods & Co. 7 Atlanta Flooring Mch., which was sold by the payee hereof to the maker hereof upon the express condition and agreement that the title to the said machine is and does remain in said Pulley Co. until this note is paid, and that if not paid at maturity, the right of possession of the said machine shall be in said Pulley Co., and in case of default in payment of any part of the amount when due, then any other outstanding notes given by the Muskegon Lumber Company to said Pulley Co. may at once be considered due, and said Pulley Co. shall have the right to enter the premises of said Lumber Co. and take possession of said machine without process of law.

"MUSKEGON LUMBER CO.,
"By R. F. MARTINDALE, P. A."

On each of the contract notes the following endorsements are found, viz: "For value received I guarantee the payment of the within note, and hereby waive protest, demand and notice non-payment thereof. Chattanooga-Wood-Split-Pulley-Co., P. W. A. Willingham, Pres. Pay M. B. Lane, Cas., or order, for collection for the First National Bank of Chattanooga, Tenn. J. H. Rathburn, Cashier."

Three objections were made to the introduction of the notes in evidence. One was that the contracts were signed Muskegon Lumber Co., by R. F. Martindale, P. A., and that if the company was a co-partnership, it should appear that Martindale was a member of the firm, or authorized to execute the papers; and

that if the company was a corporation, it should appear that he had authority to execute the papers, and that his signatures were genuine. Before ruling on the objection, the business manager of the Chattanooga-Wood-Split-Pulley-Company testified, without objection, that he sold the machine in question to Martindale, who was president of the Muskegon Lumber Co.; that witness did not know whether the Muskegon Lumber Co. was a co-partnership or a corporation, but always understood it was a corporation, and that Martindale represented himself as president of the said company, and was always recognized as such by the Wood-Split-Pulley Co. Witness further testified that he did not see Martindale sign the contracts, the preparation of which was left with the bookkeeper, but he was perfectly familiar with Martindale's handwriting, and that the signatures to the contracts were in his handwriting. The court overruled the objection. The contract was made with Martindale, who represented himself as president of the Muskegon Lumber Co., and the signatures to the contracts were shown to be in his handwriting. The proof as to the execution of the notes was not objected to, and we think it was sufficient to admit them in evidence.

Another objection was that the Wood-Split-Pulley-Co. could not maintain the suit for the use of the bank. The grounds of this objection were, that the written contracts were made with Wood-Split-Pulley Co. reserving title in it and could not be used as evidence to recover the machine for the use of the bank, the real plaintiff in the suit, and that the title to the property could not be conveyed to the bank by the transfer to it of the contracts of sale so as to enable the bank to sue. Before ruling on the objection, the manager of the Wood-Split-Pulley Co. testified, without objection,.

that the company borrowed $1,000 from the bank, and to secure the payment of the loan deposited with the bank, the contracts; that this was done before the maturity of the contracts; that the company still owed the bank the money, and the Muskegon Lumber Co. having failed to pay or deliver the machine, the suit was instituted to recover same for the benefit of the bank. The court overruled the objection. Counsel for appellant contend that in actions of replevin the plaintiff must be entitled to the immediate possession of the property sued for, and that such action can not be maintained by one for the use of another. The case of Meyer vs. Mosler, Bahan & Co., use of Warner, 64 Miss. 610, 1 South. Rep. 837, cited by counsel, holds that actions of replevin can not be brought in the name of one person for the use of another, as such actions involve only legal rights, and if equities are to be settled another form of action must be resorted to. But it was further held in this case and cases cited in it (Hundley vs. Buckner, 6 S. & M. 79; Brown vs. Thomas, 26 Miss. 335) that the name of the usee might be treated as surplusage, and recovery had by the person instituting the suit for the use of another, provided such person in whose name the suit is instituted was entitled to recover. In the case of Pearce vs. Twichell, 41 Miss. 344, it was held that the suit might be prosecuted in the name of the party holding the legal title in his own name, but as trustee for another who may be entitled to the avails of the suit, and that this might appear in the pleadings and in the *cestui que trust* be not a party to the suit.

In an action of replevin the right of possession is essentially involved, and the party entitled thereto must be the real plaintiff in the suit. A party not holding the legal title, and in no way entitled to pos-

session, can not maintain replevin for the use of another. Such a proceeding is unauthorized. If, however, the party who sues for the use of another is entitled to recover, the fact that the usee's name is inserted in the pleadings should not alone defeat recovery. The usee may be considered as no party to the action, and his name treated as surplusage. The papers offered in evidence do not show any title or right of possession of the property in question in the bank, but they do show that the title remained in the Wood-Split-Pulley-Co. until the property was paid for. We need not enquire whether the company could by a transfer, or guaranty of the contracts, convey the title to the machine in question to the bank. It is only necessary to decide, which we do, that the endorsements on the written contracts did not transfer any right of property in the machine therein described to the bank. It was held in Domestic Sewing Machine Co. vs. Arthurhultz, 63 Ind. 322, that the mere endorsement of a promissory note which stipulated that a certain chattel therein described should remain the property of the payee until the note was paid, did not of itself, vest title to such chattel in the endorsee, so as to enable him to replevy the same. So in the case before us, the offered evidence did not show the bank to be the holder of the title to the machine, or that it was in any way entitled to the possession thereof, but it did tend to show that the title and right of possession were with the WoodSplit-Pulley-Co., and for this purpose it was proper to be admitted. The phase of the case, as being for the use of the bank, may be treated as surplusage.

The remaining objection to the introduction of the contracts in evidence is that there was a variance in the description of the property in the contracts and in

the declaration. The property demanded in the declaration is "1 E. & B. Holmes Flooring Machine," and the contract notes describe the property sold as "one S. A. Woods & Co. 7 Atlanta Flooring Mch." Before ruling on the objection, the plaintiff's business manager testified that the machine sold was one E. & B. Holmes No. 7 Flooring Machine, and it was this kind of machine that was shipped to the Muskegon Lumber Co. and accepted by Martindale; that witness' Company kept both the Woods and Holmes machines, and it was a mistake of the book-keeper in describing the machine in the notes as "one S. A. Woods & Co. 7 Atlanta Flooring Mch." This testimony was also objected to on the ground that it contradicted or varied the terms of the written contracts. The court overruled the objections and admitted the papers in evidence. It was not shown that the defendant was in any way connected with the contract between the Wood-Split-Pulley-Co. and the Muskegon Lumber Co., and it is not questioned that the machine actually sold by the former company to and accepted by the latter was the one in question. The extent of the variation of the contracts by parol evidence here is in showing that the machine actually sold was not a Woods machine, but a Holmes machine. Had the defendant the right to insist on excluding the parol evidence? The general rule is familiar that parol evidence is inadmissable to contradict or vary the terms of a valid written instrument, but this rule applies only to the parties to the contract, or their privies.

In Reynolds vs. Magness, 2 Iredell, 26, it was held that the rule applies only to controversies between the parties themselves and those claiming under them, and between one of the parties and a stranger the rule does not apply. Edgerly vs. Emerson, 23 N. H. 555,

S. C. 55 Am. Dec. 207; Smith vs. Moynihan, 44 Cal. 53; Cunningham vs. Miller, 56 Ala. 522. Mr. Greenleaf states that the rule is "applied only in suits between the parties to the instrument; as they alone are to blame if the writing contains what was not intended, or omits that which it should have contained." 1 Greenleaf on Evidence, sec 279. The defendant had not shown that he was in any way connected with the contracts in question, or was in privity with the parties thereunder, and we do not see that the court erred in admitting parol evidence to show the mistake as to the description of the machine, and the contracts to which objection was made.

After the contracts were admitted in evidence, the business manager of the plaintiff company further testified that he made the contract with Martindale for the sale of the machine a short time before it was shipped, and the notes were made out by the bookkeeper and executed at the time the machine was shipped. The witness also stated that the terms and conditions upon which he sold the machine were that the title of the same should remain in the Wood-Split-Pulley-Co. until the machine was fully paid for. The defendant objected to the testimony on the ground that plaintiff having introduced the written contracts, must rely upon them as the best evidence of the terms and conditions of the sale. The court overruled the objection. The contracts set out the terms and conditions of the sale, and plaintiff did not claim that there was any mistake as to them in drawing the contracts. The written contracts, then, correctly embodied the terms and conditions of the sale according to plaintiff's showing, and the admission of parol evidence as to them was strictly an infraction of the rule. We do not see, however, that the evidence objected to can

have any prejudicial effect upon the defendant. The written contracts showed that the title to the machine was to remain in the plaintiff until it was fully paid for, and aside from the contract notes and the testimony objected to there was none other on the subject. The jury could not have correctly arrived at any other conclusion than the one reached as to the terms and conditions of the sale, had the objectionable evidence been excluded, and on such a state of proof it can not be said that the improper evidence was reversible error.

The defendant offered to prove that he was an innocent purchaser of the machine from T. A. Jennings for $300, and that at the time of the purchase he had no knowledge of the contracts as to the sale of the property to the Muskegon Lumber Co. On plaintiff's objection the court refused to admit the evidence, and this ruling is all that remains for our consideration. Whether a vendor of a chattel in a conditional sale can retain the title, and upon the failure of the condition recover the property against an innocent *bona fide* purchaser, has been a vexed question in the courts. The following authorities reveal to some extent the judicial discussion of the question: Stadtfeld vs. Huntman, 92 Penn. St. 53, S. C. 37 Am. Rep. 661 and notes; Fairbanks, Morse & Co. vs. Eureka Company, 67 Ala. 109; Sumner vs. Woods, Ibid, 139, S. C. 42 Am. Rep. 104; 1 Benjamin on Sales, sec. 425 *et seq.* This court has decided in Campbell Printing Press and Manuf'g Co. vs. Walker, 22 Fla. 412, 1 South Rep. 59, that an agreement in writing to sell personal property, the title to which is reserved by the seller until the purchase money is paid by the buyer, is a conditional sale and does not vest title in the buyer until the performance of the condition, and that such an agree-

ment is valid as against subsequent creditors and *bona fide* purchasers for valuable consideration without notice. It is true, as contended by counsel, that on the facts of the case the court was not compelled to go to the extent that it did in disposing of the case before it, still it must be admitted that the question as to the rights of *bona fide* purchasers without notice under such sales was decided, and the weight of authority is on the side of the decision. It has generally been understood that the question was settled by this court in the decision referred to, and we accept it as authority. Under this view, the ruling of the court excluding the evidence was not error.

The judgment appealed from will be affirmed, and it is so ordered.