FIRESTONE SERVICE STORES, INC., of Gainesville, v. IRVIN J. WYNN, for the use and benefit of the Home Insurance Company, New York.

179 So. 175.
Division B.
Opinion Filed January 28, 1938.
Rehearing Denied March 3, 1938.

*Hampton, Jordan & Lazonby,* for Plaintiffs in Error;
*Crutchfield & Adams* and *John A. H. Murphree,* for Defendant in Error.

BROWN, J.—This action was brought in the court below in the name of Irvin J. Wynn for the use and benefit of The Home Insurance Company, New York, against the Firestone Service Stores, Inc., of Gainesville, for damages done a Plymouth automobile owned by Irvin J. Wynn, which on the 10th day of July, 1932, fell from a pneumatic hoist or grease rack located on the premises of Firestone Service Stores, Inc., of Gainesville.

The declaration consists of six counts. In three of the counts it is alleged that The Home Insurance Company issued its policy of insurance covering the automobile of Irvin J. Wynn from loss by collision. That a loss and damage was had. That the Insurance Company paid Irvin J. Wynn $368.75 in fulfillment of a contract of insurance and therefore became subrogated to the right of Irvin J. Wynn to recover the loss caused by the alleged negligence of the Firestone Service Stores. In the remaining three counts it is alleged that The Home Insurance Company issued its policy covering the automobile as above. That

after the loss Irvin J. Wynn in consideration of the amount paid under their policy by reason of the loss, executed a receipt and subrogation assignment to The Home Insurance Company. The assignment is made by words of reference a part of each count and discloses that the sum paid by The Home Insurance Company to Wynn, is a settlement in full of all claims arising under an insurance policy.

The defendant, Firestone Service Stores, by plea to each count, denied, among other things, the issuance of a policy insurance, the payment under the policy, and the subrogation of The Home Insurance Company to the rights of Wynn.

After testimony on the merits, over the objection of the defendant on the ground that the plaintiff had not yet shown the right to sue, the plaintiff introduced into evidence the following instruments:

1. "Proof of loss" signed by Irvin J. Wynn. The instrument appears to be information furnished The Home Insurance Company by Wynn on damage to his automobile covered under a policy numbered S 425864.

2. A subrogation receipt and assignment incorporated into each count of the Declaration, signed "Irvin J. Wynn." The agreement shows on its face that Wynn received $368.75 for damage to his automobile under a contract of insurance numbered S 425864 and that in consideration of the payment under the terms of said contract of insurance, the Insurance Company is subrogated to his right of action against the Firestone Service Stores.

3. Draft by the Home Insurance Company payable to the Commercial Credit Company. The draft recites that it is in payment of loss and damage to property described in a policy numbered S 425864.

Irvin J. Wynn, witness for plaintiff, testified as follows:

"On July 6, 1932, I purchased a Plymouth automobile, two door sedan, through Melton Motor Company of Gainesville. I did not pay cash for the car; I bought it on terms. ·Commercial Credit Company of Jacksonville handled the paper. The contract was executed in Jacksonville and Mr. Melton was present. The contract covered the balance due on the car. The insurance for the protection of the Commercial Credit Company was supposed to be included in the deal, along with the balance on the car. The premium on that insurance was included in the balance due the Commercial Credit Company. The name of the insurance company was Home Insurance Company, of New York. I haven't the policy that they issued to me. I do not know what became of it."

"You asked me to locate and bring the insurance policy that has been testified about with me to the trial this morning, but I am not in possession of the insurance policy and cannot say where it is. I don't know."

"Q. Did you ever receive a policy from the Home Insurance Company insuring the automobile that you bought from Mr. Melton, that has been testified about?

"A. I saw a copy of it. I did not see the original. I cannot say definitely whether I received a notice from the company stating that the car was insured. It was the supposition or the implied supposition that the premium was paid on the car when it was delivered, to cover the insurance."

Mr. A. E. Melton, witness for the plaintiff, testified:

"Q. At the time the car was sold to Mr. Wynn, was it insured to protect the Commercial Credit Company?

"A. I know it was insured as well as I know that any car we sell under a retain title contract is insured. Whenever I sell a car under a retain title I also require fire and theft and collision insurance—composite insurance. The

premium is included in the contract, and we discussed that with Mr. Wynn as to premiums. The Home Insurance Company carried that risk."

The defendant made timely objections to the testimony regarding the insurance policy, contending that the policy itself was the best evidence. The contract of insurance was never introduced into evidence, nor was it accounted for. Defendant moved for a directed verdict on the grounds that plaintiff's right to sue was never established as the contract of insurance was not produced and that the allegation in the declaration that a policy of insurance was issued covering assured's automobile from collision was a material allegation and that it was not sustained by competent evidence. The motion was denied by the trial judge. The jury brought in a verdict for the plaintiff and judgment was awarded for $368.75.

Could the plaintiff in this case lawfully recover without producing the policy of insurance? This is the controlling question involved. In Cooley's Briefs on Insurance, 2nd Ed., Vol. 5, under the reading, "Subrogation," we find the following statements which are backed up by an abundance of reliable citations and which appear to be the settled law in almost every jurisdiction.

"When an insurer pays to the insured the amount of the loss, it is subrogated, in a corresponding amount, to the insured's right of action against any other person responsible for the loss."

"The right of subrogation in equity does not depend on the presence of a special clause in the policy conferring the right."

"Moreover, if the insurer has paid the loss, the fact that it might have successfully contested the claim under the policy and relieved itself of liability to the insured does not affect its rights of subrogation. The equities between the

insurer and the insured are not matters with which the wrongdoer has any concern."

"It seems to be well settled that the insurer, by paying the loss caused by the wrongful or negligent act of a third person, thereby obtains an equitable assignment of the insured's cause of action against such person."

"In a suit to enforce the right of subrogation, the proof of loss is properly admitted as showing plaintiff's liability to the insured (Liverpool and L. & G. Ins. Co. v. Southern Pac. Co., 125 Cal. 434, 58 Pac. 55). And it is not error to admit a written assignment from the insured to the insurer (St. Louis, A. & T. Ry. Co. v. Fire Ass'n of Philadelphia, 55 Ark. 163, 18 S. W. 43)."

"The defendant in an action to enforce the right of subrogation cannot rely on defenses which might have been raised between the insurer and the insured."

In the case at bar, the fact that the insurance policy itself was not admitted into evidence to prove the issuance of such a policy and payment of loss by the insurance company under this contract, will not prevent the plaintiff from recovering. The proof of loss, signed by Wynn, was a claim under the policy and was a recognition on the part of Wynn that his car was insured. The payment of the claim by the insurance company was certainly a recognition on the part of The Home Insurance Company that it was liable under the policy. The subrogation agreement signed by Wynn recognizes the fact that a policy had been issued, a loss had resulted and that the Insurance Company had paid the loss and was subrogated to the rights of the insured, Wynn, against the tortfeasor.

The plaintiff Insurance Company made the allegation in its declaration that "an insurance policy had been issued covering the automobile of Irvin J. Wynn from loss by collision." Was not the "proof of loss" and "subrogation

agreement" sufficient evidence to show that both parties, the insured and the insurer, recognized this fact? The insured in his testimony says that he saw a copy of the insurance policy and made other statements to the effect that the premiums were paid by the Commercial Credit Company and were a part of the balance due on the car. He also states, "I haven't the policy they issued me." This statement apparently is meant to convey the idea he was issued a policy. The testimony of A. E. Melton is certainly evidence of the existence of a contract of insurance. By the documents that were introduced and by the testimony of these witnesses it appears that the plaintiff has established the right to sue and has established by competent evidence the material allegations made in the declaration.

The appellant's contention is that the policy itself must be put into evidence, under the "best evidence" rule, and that parol evidence cannot be used to establish the issuance of this policy.

This contention is unsound. We have already stated the doctrine that "the defendant in an action to enforce the right of subrogation cannot rely on the defenses which might have been raised between the insurer and the insured." Thus it appears that the contents of the policy were not in issue and the thing to be proved was not whether the insurer could have successfully evaded having to pay the insured; nor were the terms of the contract in issue, but only whether there was in fact an issuance of an insurance policy on the automobile by the insurance company to Wynn.

"Undoubtedly the best evidence of the contents of a written instrument consists in the actual production of the instrument itself, and the general rule is that secondary evidence of its contents cannot be admitted until the nonproduction of the original has been satisfactorily accounted

for. But it is unnecessary to produce deeds or other writings, or account for their absence, in order to legalize a mere incidental mention of their existence by a witness, no attempt being made to prove their contents or legal effect. Again, the existence of writings as a fact may be proved, although they are not produced, nor their absence accounted for * * *. Furthermore, the principle which requires production of a writing to prove its contents, and excludes proof thereof, has been held to have no application when the inquiry into its contents comes up collaterally at the trial, and the contents are not directly involved in the controversy. 10r. C. L. 904-5, and cases cited therein.

Elliott on Evidence, Sec. 216, recognizes the following exception to the parol evidence rule:

"There is a clear distinction between proving the existence of a fact which has been put in writing and proving the writing and the contents of the writing itself. If the essential fact to be proved is not the contents of a written instrument, but an independent fact, to which the writing is merely collateral, or of which it is merely an incident, there is no reason for the application of the rule. In such cases the contents of the document are no part of the issue and there is no understanding that the writing shall be the sole repository of the fact. When the parol evidence is as near to the fact testified as to the writing itself, then each is primary."

In 2 Wigmore on Evidence, Sec. 1253, the author goes so far as to say:

"Let the trial judge determine absolutely, and without review, the application of the principle to each case. Whether a document is 'collateral' is practically a question whether it is important enough under all the circumstances, to need production; and the judge presiding over the trial is fittest to determine this question finally."

And again in Section 1242:

"The rule applies only to the terms of the document, and not to any other fact about the document. In other words, the rule applies, to exclude testimony designed to establish the terms of the document, and requires the document's production instead, but does not apply to exclude testimony which concerns the document without aiming to establish its terms."

In Roof v. Chattanooga Wood Split Pulley Co., 36 Fla. 284, 18 So. 597, this Court held:

"The general rule is familiar that parol evidence is inadmissible to contradict or vary the terms of a valid written instrument, but this rule applies only to the parties to the contract or their privies. In Reynolds v. Magness, 2 Ired. 26, it was held that the rule applies only to controversies between the parties themselves and those claiming under them, and between one of the parties and a stranger, the rule does not apply."

The foregoing authorities indicate that the trial court was correct in its ruling. In the case at bar, the only purpose that the production of the insurance policy could have served was to show the relationship between the insured and the Home Insurance Company and to show that they were under a duty to pay the $368.75 to the insured. The terms of the contract were not in issue, and the existence of the policy or contract of insurance was thoroughly proven by documentary evidence that recognized the existence of the policy and the duty of the insurance company to pay the loss, combined with the testimony of Wynn and Melton.

The judgment of the lower court should be affirmed.

WHITFIELD, P. J., and CHAPMAN, J., concur.

ELLIS, C. J., and TERRELL and BUFORD, J. J., concur in the opinion and judgment.

On Petition for Rehearing.

Brown, J.—A petition for rehearing has been filed in this case. Grounds 1 and 2 of the petition read as follows:

"1. Because the Court completely misinterpreted the contention of Plaintiff in Error. The Court on page 7 of the opinion says 'the appellants' contention is that the policy must be put into evidence under the best evidence rule and that parol evidence cannot be used to establish the issuance of the policy.' Plaintiff in Error has never made such contention, but on the contrary stated that parol evidence of the indemnity policy was applicable if it was the best evidence. (See page 4 of the Reply Brief.)

"2. Because there was no contention of, or attempt on the part of the Plaintiff in Error to rely on defenses that might have been raised between insurer and insured."

In fairness to counsel for plaintiff in error, we find that page 4 of the reply brief substantiates the first paragraph above quoted, and the writer makes due apologies for misinterpreting the contentions of plaintiff in that regard.

As regards the 2nd paragraph, while we discussed in the opinion the proposition that the plaintiff in error could not rely on defenses that might have been raised between the insurer and the insured, we did not state in the opinion that any such contention was made by plaintiff in error; nor did we intend to imply that any such contention was made; but this proposition of law was merely mentioned as supporting the reasoning of the Court in arriving at the conclusions stated in the opinion. Not being satisfied that the reasoning of the opinion or the conclusions reached therein were erroneous, the petition for rehearing will be denied.

The "subrogation receipt and assignment" referred to in the Court's opinion reads, as shown by the record, as follows:

"Received of the Home Insurance Company of New York, the sum of Three hundred sixty-eight and 75/100 Dollars, being in full of all claims and demands for loss and damage by collision which occurred on the 10th day of July, 1933, to property insured under Home Policy numbered 5-435864 issued at the Jacksonville, Fla., CCC agency of said Company.

"Now, therefore, in consideration of said payment, we hereby assign, set over, transfer, subrogate and substitute the said Home Insurance Company of New York, its successors and assigns, to any and all rights, claims, interests or action which we have or ought to have against the Firestone Service Stores, Inc., who may be liable or hereafter adjudged liable for the burning or destruction of said property, or against any person, persons or corporation, to the extent of the said sum of Threee hundred sixty-eight and 75/100 Dollars, and we hereby assign, transfer and set over the same to the said Home Insurance Company of New York or its successors or assigns as aforesaid: in accordance with the terms of said Policy of Insurance, which are:

" 'If this Company shall claim that the loss was caused by the act of neglect of any person or corporation, private or municipal, this Company shall on payment of the loss be subrogated to the extent of such payment to all right of recovery to the Assured for the loss resulting therefrom, and such right shall be assigned to this Company on receiving such payment.'

"We hereby expressly authorize and empower the said Home Insurance Company of New York to sue, compromise or settle in my name or otherwise to the extent of the money paid as aforesaid. It being understood that any action taken by said Home Insurance Company shall be without charge or cost to me or to my legal representative.

106

"Dated this 3rd day of September, 1933, at Jacksonville, Fla.

"WITNESS:

"W. G. RYAN.                     "IRVIN J. WYNN."

We think this document shows that the insurance policy referred to and quoted from was a contract of indemnity, and shows that the insurance company had actually indemnified Wynn, the insured, by paying to him the amount of the loss sustained.

After due consideration of all the grounds of the petition for rehearing, our conclusion is that the same should be and is hereby denied.

WHITFIELD, P. J., and CHAPMAN, J., concur.

ELLIS, C. J., and TERRELL and BUFORD, J. J., concur in the opinion and judgment.