386 So.2d 538 (1980)
Clifford WILLIAMS, Jr., Appellant,
v.
STATE of Florida, Appellee.
No. 50666.
Supreme Court of Florida.
June 12, 1980.
Rehearing Denied August 26, 1980.
*539 Margaret Good, Asst. Public Defender, Tallahassee, for appellant.
Jim Smith, Atty. Gen. and Patti L. Englander, Asst. Atty. Gen., Tallahassee, for appellee.
PER CURIAM.
Appellant Clifford Williams, Jr. was convicted of murder in the first degree and attempted murder in the first degree. The trial judge, choosing not to follow the jury's recommendation of life imprisonment, imposed a sentence of death for the murder and a sentence of thirty years for the attempted murder. Jurisdiction vests in this Court pursuant to article V, section 3(b)(1), Florida Constitution. We affirm the convictions but vacate the death sentence.[1]
Nina Marshall,[2] the victim of the attempted murder and the prosecution's star witness, testified that she and the murder victim, Jeannette Williams,[3] shared a bedroom in an apartment at 1550 Morgan Street, Jacksonville, Florida. Nathan Myers,[4] and occasionally appellant, occupied the other bedroom. There were three sets of keys to the apartment; Ms. Marshall and Ms. Williams shared one set, Myers and appellant had the other two.
Ms. Marshall and Ms. Williams went to bed shortly before 11:30 p.m. on the night of the murder. The door to the apartment was locked. Ms. Marshall rolled four marijuana joints; Jeannette smoked two of them, Nina one and a half. Marshall testified that she did not finish the second joint because "the reefer wasn't any good. It didn't make you high." The women fell asleep while watching the late movie. Ms. Marshall was first awakened by the clicking sound of the front door locks. Assuming that Myers was entering the apartment, Marshall quickly fell back asleep. She awoke the second time to the sound of gunfire and realized that she and Jeannette had been shot. Ms. Marshall testified that she looked toward the front of the room and saw Clifford Williams and Nathan Myers standing on either side of the television set.
*540 Ms. Marshall waited until her assailants had left and then struggled bleeding out of the apartment. She hailed a passing motorist who took her to the hospital. There she wrote on a piece of paper the names Clifford Williams, Nathan Myers and Jeannette Williams, and the address 1550 Morgan Street.
During the sentencing phase of the trial the prosecution offered no evidence in aggravation against appellant, and the defense offered no evidence in mitigation. The court, relying on the facts adduced at trial and the presentence investigation report, found four aggravating circumstances offset by no mitigating circumstances, which in its view compelled a sentence of death.
Appellant presents six issues for our review, two of which do not merit extended discussion. He first asserts error in the court's failure to excuse an allegedly prejudiced juror. The trial judge heard testimony in chambers and properly concluded that no prejudice had been demonstrated. Appellant has failed to meet his heavy burden of showing an abuse of judicial discretion. Lamb v. State, 90 Fla. 844, 107 So. 530 (1925); Walsingham v. State, 61 Fla. 67, 56 So. 195 (1911); Mathis v. State, 45 Fla. 46, 34 So. 287 (1903). See also Fla.R.Crim.P. 3.330. Secondly, the judge's instruction concerning the uncorroborated testimony of one witness in a criminal trial is a correct statement of Florida law and did not confuse or mislead the jury.
Appellant's first colorable claim is that the trial court erred in permitting the introduction of oral evidence concerning what Nina Marshall wrote at the hospital. He maintains that the best evidence rule required either production of the original piece of paper on which the names were written or an adequate explanation for its absence.
We must agree with this contention. The best evidence rule provides that in proving the terms of a writing, the original writing must be produced unless it is shown to be unavailable for some reason other than the serious fault of the proponent. Firestone Service Stores, Inc. of Gainesville v. Wynn, 131 Fla. 94, 179 So. 175 (1938); Wicker v. Board of Public Instruction of Dade County, 159 Fla. 430, 31 So.2d 635 (1947); Griswold v. State, 77 Fla. 505, 82 So. 44 (1919); Wilson v. Jernigan, 57 Fla. 277, 49 So. 44 (1909); McCormick, Evidence § 230 (2d ed. 1972). Its purpose is to ensure the accurate transmittal of critical facts contained in a writing. 4 Wigmore, Evidence § 1179 (Chadbourn rev. 1972). Nina Marshall's testimony concerning what she wrote at the hospital was offered to prove that she did indeed write the names of Williams and Myers on the piece of paper, which in turn would identify them as the murderers. Because the contents of the writing were directly in issue, the judge should have required the state to explain the absence of the original writing before allowing parol evidence of the identification.
The trial court's error does not justify reversal, however, for it was clearly harmless. Rather than contesting the accuracy of the terms contained in Ms. Marshall's note, appellant's objection was directed to the reliability of the out-of-court identification, an issue not addressed by the best evidence rule.[5] Moreover, counsel had ample opportunity to discredit the identification by cross-examining Ms. Marshall about the events at the hospital. Given this posture, we do not believe that the trial court's technical error injuriously affected the substantial rights of appellant. § 59.041, Fla. Stat. (1975); Prince v. Aucilla River Naval Stores Co., 103 Fla. 605, 137 So. 886 (1931); Reliable Services, Inc. v. Taft, 247 So.2d 97 (Fla. 3d DCA 1971); accord, Myrick v. United States, 332 F.2d 279 (5th Cir.), cert. denied, 377 U.S. 952, 84 S.Ct. 1630, 12 *541 L.Ed.2d 497 (1964); Sauget v. Johnston, 315 F.2d 816 (9th Cir.1963).[6]
As is our duty in death penalty cases, we have thoroughly examined the entire record in this case and find the evidence more than sufficient to support appellant's conviction. Aldridge v. State, 351 So.2d 942 (Fla. 1977); Gibson v. State, 351 So.2d 948 (Fla. 1977), cert. denied, 435 U.S. 1004, 98 S.Ct. 1660, 56 L.Ed.2d 93 (1978). The motion for a new trial based on the insufficiency of the evidence was therefore properly denied.
Turning to the sentencing phase of the trial, we are constrained to conclude that the judge's findings, in the most part, are not supportable. The findings, in pertinent part, are as follows:
B. WHETHER THE DEFENDANT HAS PREVIOUSLY BEEN CONVICTED OF ANOTHER CAPITAL FELONY OR OF A FELONY INVOLVING THE USE OR THREAT OF VIOLENCE TO THE PERSON.

FACT:
A careful study of the Pre-Sentence Investigation shows that this defendant has many arrests dating back to September of 1959; that on 10/28/60 defendant was sentenced to two (2) years in the County Jail for Attempted Arson and that on 6/20/65 the defendant was convicted by a jury and sentenced to eight (8) years in the State Prison for Armed Robbery. The defendant was then paroled 4/14/70 and his parole revoked 7/31/72; on 12/27/71 defendant was convicted by a jury of Resisting Arrest and sentenced to one (1) year in the County Jail. On 6/7/76 defendant pled guilty and was sentenced to one (1) year in the County Jail for Resisting an Officer with Violence (this offense occurred prior to the subject murder, but defendant was sentenced thereon subsequent to said murder). It should also be noted that the defendant has pending at present in this Division of the Circuit Court of Duval County a charge of Conspiracy to Commit a Felony, to-wit: Sale or Delivery of Heroin, and that offense is alleged to have occurred prior to the subject murder although the defendant has yet to be tried on same.
It would therefore appear that this defendant has been involved in constant, serious difficulties with the law since September 9, 1959, having been arrested in excess of twenty-five (25) times and having been convicted of several felonies involving the use or threat of violence to the person.

CONCLUSION:
This is an aggravating circumstance because this defendant has been found guilty of crimes of violence to many persons, which crimes were felonies, before he was convicted by a jury for the cold-blooded murder of Jeannette Elizabeth Williams.
C. WHETHER, IN COMMITTING THE MURDER OF WHICH HE HAS JUST BEEN CONVICTED, THE DEFENDANT KNOWINGLY CREATED A GREAT RISK OF DEATH TO MANY PERSONS.

FACT:
During the murder of Jeannette Elizabeth Williams the defendant and the co-defendant, Hubert Nathan Myers, did shoot with pistols Nina Annette Dyals several times and at least twice in the throat, in attempting to kill the said Nina Annette Dyals, as charged in the Second Count of the Indictment.

CONCLUSION:
This is an aggravating circumstance because not only did the defendant murder Jeannette Elizabeth Williams, but either simultaneously therewith or immediately thereafter attempted to murder Nina Annette Dyals by shooting *542 her with a pistol, and it was only by the skill of medical science and the grace of God that Ms. Dyals' life was saved.
.....
G. WHETHER THE MURDER OF WHICH THE DEFENDANT HAS BEEN CONVICTED WAS COMMITTED TO DISRUPT OR HINDER THE LAWFUL EXERCISE OF ANY GOVERNMENTAL FUNCTION OR THE ENFORCEMENT OF LAWS.

FACT:
Facts brought out at the trial of this case show that this defendant and Hubert Nathan Myers did in fact shoot with pistols Jeannette Elizabeth Williams and Nina Annette Dyals while they both were asleep in their bed. Ms. Williams died. Ms. Dyals survived, although seriously wounded. The Court must assume therefore that this defendant did not intend to leave a witness to his murder of Ms. Williams alive and did intend to hinder, disrupt and impede the lawful exercise of the duly authorized law enforcement officers of Duval County in investigating Ms. Williams' murder.

CONCLUSION:
There is an aggravating circumstance under this paragraph.
H. WHETHER THE MURDER OF WHICH THE DEFENDANT HAS BEEN CONVICTED WAS ESPECIALLY HEINOUS, ATROCIOUS OR CRUEL.

FACT:
The defendant stands convicted of First Degree Murder of Jeannette Elizabeth Williams and Attempted First Degree Murder of Nina Annette Dyals.
The record of the trial amply shows that this defendant, together with Hubert Nathan Myers, entered the victims' apartment in the nighttime and shot both victims with pistols, which were partially covered by a blanket or pillow or some other object, at close range while the victims were sleeping in their bed. The record further shows that defendant's actions were premeditated, senseless, cruel, and indicative of the unreasonable, unlawful and violent nature of this defendant and the especially heinous, atrocious or cruel nature of the murder of Jeannette Elizabeth Williams.

CONCLUSION:
This is an aggravating circumstance. This Court cannot conceive of any more heinous, atrocious or cruel act than to enter someone's home in the night while they are sleeping in their bed and shoot them to death.
.....
CONCLUSIONS OF COURT
There are no mitigating circumstances existing, either statutory or otherwise, which would outweigh any aggravating circumstances to justify a sentence of Life Imprisonment rather that a sentence of Death.
There are sufficient aggravating circumstances which exist to justify the sentence of Death.
First, the record does not support a finding that Williams "knowingly created a great risk of death to many persons."[7] In Kampff v. State, 371 So.2d 1007 (Fla. 1979), we held that a great risk of death to two persons was insufficient to trigger this circumstance. Under our statute the risk of death must be to "many" persons, not just one or two. Second, the finding of an aggravating circumstance dealing with a prior conviction of a "felony involving the use or threat of violence"[8] is defective. The state must prove every aggravating circumstance beyond a reasonable doubt. Alford v. State, 307 So.2d 433 (Fla. 1975), cert. denied, 428 U.S. 912, 96 S.Ct. 3227, 49 L.Ed.2d 1221 (1976); State v. Dixon, 283 So.2d 1 (Fla. 1973), cert. denied, 416 U.S. 943, 94 S.Ct. 1950, 40 L.Ed.2d 295 (1974). The state obviously failed to carry its burden here, for it offered no evidence, either *543 at trial or during the sentencing phase, of a prior conviction against appellant. The judge should not have considered this circumstance in his sentence based solely on information contained in the presentence investigation report. Third, appellant's crime did not rise to the level of "especially heinous, atrocious, or cruel."[9] Jeannette Williams died almost instantaneously from her gunshot wounds. The murder, while utterly reprehensible, was not "accompanied by such additional acts as to set the crime apart from the norm of capital felonies  the conscienceless or pitiless crime which is unnecessarily torturous to the victim." Id. at 9. Accord, Lewis v. State, 377 So.2d 640 (Fla. 1979); Cooper v. State, 336 So.2d 1133 (Fla. 1976), cert. denied, 431 U.S. 925, 97 S.Ct. 2200, 53 L.Ed.2d 239 (1977); Tedder v. State, 322 So.2d 908 (Fla. 1975).
There remains, then, one aggravating circumstance offset by no mitigating circumstances.[10] Although a sentence of death is normally presumed in this situation,[11] the jury's recommendation of life imprisonment militates against such a presumption. A jury recommendation under our death penalty statute should be accorded great weight. "In order to sustain a sentence of death following a jury recommendation of life, the facts suggesting a sentence of death should be so clear and convincing that virtually no reasonable person could differ." Id. at 910. Accord, McCaskill v. State, 344 So.2d 1276 (Fla. 1977); Provence v. State, 337 So.2d 783 (Fla. 1976), cert. denied, 431 U.S. 969, 97 S.Ct. 2929, 53 L.Ed.2d 1065 (1977); Thompson v. State, 328 So.2d 1 (Fla. 1976). Even assuming the validity of the judge's finding with respect to the remaining aggravating circumstance, the facts suggesting a sentence of death in this case are not sufficiently clear and convincing to override the jury's recommendation.
Accordingly, appellant's convictions and thirty-year sentence are affirmed, but the cause is remanded to the trial court for imposition of a sentence of life imprisonment without possibility of parole for twenty-five years on the first degree murder conviction.
It is so ordered.
ENGLAND, C.J., and SUNDBERG, ALDERMAN and McDONALD, JJ., concur.
BOYD, J., concurs in part and dissents in part with an opinion, with which ADKINS, J., concurs.
ADKINS, J., concurs as to guilt and dissents as to sentence.
OVERTON, J., concurs in the conviction but would remand for a new sentencing proceeding.
BOYD, Justice, concurring in part and dissenting in part.
I concur in that portion of the majority opinion finding appellant guilty, but I dissent to the reduction of sentence to life imprisonment. I would affirm both the conviction and sentence of death.
ADKINS, J., concurs.
NOTES
[1] Appellant does not challenge the propriety of the thirty-year sentence for attempted murder.
[2] Also know as Nina Dyals.
[3] No relation to appellant.
[4] Myers was tried jointly with appellant but receive a life sentence. His conviction is not before us today.
[5] Indeed, counsel for appellant and Myers appear to concede that Ms. Marshall wrote the defendants' names on a piece of paper at the hospital. The principal objection to introduction of the testimony was on the grounds of hearsay and relevance. The best evidence rule objection seems to have been included almost as an afterthought.
[6] Appellant contends further that evidence of Ms. Marshall's out-of-court identification should have been excluded as a prior consistent statement offered to bolster her in-court identification. Because the objection was not raised at the trial level, we decline to entertain it here. Lineberger v. Domino Canning Co., 68 So.2d 357 (Fla. 1953); Tampa Elec. Co. v. Charles, 69 Fla. 27, 32, 67 So. 572, 573 (1915); Frank v. Ruwitch, 318 So.2d 188 (Fla. 3d DCA 1975).
[7] § 921.141(5)(c), Fla. Stat. (1975).
[8] § 921.141(5)(b), Fla. Stat. (1975).
[9] § 921.141(5)(h), Fla. Stat. (1975).
[10] Due to our disposition of this issue, we intimate no view as to the validity of the judge's finding under section 921.141(5)(g).
[11] State v. Dixon, 283 So.2d 1, 9 (Fla. 1973).