480 So.2d 680 (1985)
In the Interest of J.H., R.H. & J.S., Each a Child. Dorothy Hall, Appellant,
v.
STATE of Florida, Appellee.
No. BE-229.
District Court of Appeal of Florida, First District.
December 23, 1985.
*681 Cynthia L. Nichols, of Nichols & Nichols, Jacksonville, for appellant.
Jim Smith, Atty. Gen., Kenneth McLaughlin, Asst. Atty. Gen., Tallahassee, for appellee.
SHIVERS, Judge.
This is an appeal from the trial court's orders of adjudication and disposition, finding appellant's three minor children to be dependent and placing the children in foster care under direction of Health and Rehabilitative Services (HRS). We reverse.
The appellant, Dorothy Hall, is a 41-year-old mother of six children, three of whom are in her custody and are the subject of this appeal. In March of 1984, HRS received a "neglect referral" on appellant and assigned one of its intake supervisors (Joyce Hagins) to investigate the matter. At some point during that month, appellant met with a different HRS counselor and entered into a "voluntary agreement" with HRS. According to Ms. Hagins, the agreement consisted of a list of the family's problems as well as various solutions to those problems. Ms. Hagins further testified that, after the agreement was made, *682 she made arrangements for two community services (Homemaker, which was already involved with the family, and Family Skills) to assist the family.
On July 27, 1984, after appellant had allegedly failed to fulfill the terms of the agreement, HRS filed three separate petitions for dependency, alleging that appellant had neglected the children pursuant to section 39.01(26), Florida Statutes (1983)[1]. As grounds for the alleged neglect, each of the petitions stated the following:
[T]he mother entered into a voluntary agreement with Health and Rehabilitative Services on April 16, 1984, due to neglect of said child. She has refused Homemaker Services and has been unavailable to meet with the assigned Protective Services and Foster Care counselors.
The living situation is unsafe and in extreme need of repairs. Mrs. Hall was offered a low income apartment in June, but turned it down. Further, on July 23, 1984, the home was observed to have falling plaster holes in the floor, broken windows, and clothing and other clutter about the residence. She insists she has attempted to locate more suitable housing, but states she has not had the money for the usually required deposit on the same.
Further, it was recommended that the family become involved with Family Skills and Mental Health counseling. Mrs. Hall has not been seen at Family Skills since February of this year.
An adjudicatory hearing was conducted on October 16, 1984 at which HRS presented the testimony of Ms. Hagins, Ms. Serkin (a family therapist with Family Skills) and Ms. Bartley (a social worker with Homemaker). Appellant testified on her own behalf. On November 13, 1984 the trial court entered an order of adjudication finding the evidence sufficient to establish the children's dependency by reason of appellant's neglect. We agree with appellant that the evidence is not sufficient to establish neglect and we reverse the trial court's order.
First, while the trial court stated in its order of adjudication that "violation of a voluntary agreement does not in and of itself suffice to establish dependency" the order is nonetheless based almost exclusively on appellant's alleged failure to take advantage of the services provided by HRS. Thus we can reach no other conclusion but that the court relied heavily on HRS's alleged violations of the voluntary agreement. Yet, the agreement itself was never introduced into evidence at the hearing. There was no testimony presented which would reflect the terms of the agreement (or, for that matter, whether the agreement even contained specific terms), nor does the agreement appear in the record on appeal. Thus, there was apparently no basis for the trial court's conclusion that the agreement was violated or that the appellant "refused to do her part."
Second, aside from making appellate review difficult, HRS's failure to introduce the agreement into evidence also constituted a violation of the best evidence rule. Section 90.952, Florida Statutes (1983). The issue at the dependency hearing directly involved the terms of the agreement, and it is obvious from the record that the agreement was available for production at the hearing. Williams v. State, 386 So.2d 538 (Fla. 1980). Thus, Ms. Hagins should not have been allowed to testify as to the contents of the agreement absent the introduction of the agreement itself into evidence.
Next, section 415.505(1)(e), Florida Statutes (1983) states:

*683 (e) If the department determines that a child requires immediate or long-term protection through:
* * * * * *
3. Foster care, shelter care, or other substitute care to remove the child from his parents' custody, such services shall first be offered for the voluntary acceptance of the parents or other person responsible for the child's welfare, who shall be informed of the right to refuse services as well as the department's responsibility to protect the child regardless of the acceptance or refusal of services.
(emphasis supplied).
Appellant Hall testified at the hearing that she was reluctant to sign the agreement because several portions of it had been left blank. According to Hall, "I didn't think it was right for me to sign a plain piece of paper. How was I supposed to understand that?" She stated she eventually signed the agreement "because they said if I didn't sign it they was going to tell the judge." Moreover, the HRS counselor who actually met with appellant when she signed the agreement was not present at the hearing to testify. Thus, the undisputed evidence indicates that the agreement was not entered into voluntarily.
In addition to the above procedural errors, the transcript at the hearing indicates that appellant's counsel was not furnished a copy of the agreement prior to the hearing. In fact, the record indicates that a copy of the agreement was not furnished to appellant's counsel until he objected to Hagins' testimony regarding its contents.
Finally, the trial court's finding that appellant's house was "unsafe" was neither supported by the evidence nor sufficient to establish neglect. Although there was ample evidence that Hall's rented home was in need of the repairs, there was no evidence that the home was "unsafe" or that it in any manner constituted "neglect" as that term is defined in section 39.01(26), Florida Statutes (1983).
In light of the above errors, we find that appellee failed to establish the minor children's dependency by a preponderance of the evidence as required by section 39.408(1), Florida Statutes (1983) and that the errors committed during the adjudicatory hearing constituted a denial of due process. See A.Z. v. State, 383 So.2d 934 (Fla. 5th DCA 1980) and In the Interest of S.J.T. and T.N.T., 475 So.2d 951 (Fla. 1st DCA 1985).
The order of adjudication dated November 13, 1984 and the subsequent disposition order are REVERSED.
MILLS and ZEHMER, JJ., concur.
NOTES
[1] Section 39.01(26) defines neglect as follows:

"Neglect" occurs when a parent or other legal custodian, though financially able, deprives a child of, or allows a child to be deprived of, necessary food, clothing, shelter, or medical treatment or permits a child to live in an environment when such deprivation or environment causes the child's physical, mental, or emotional health to be significantly impaired or to be in danger of being significantly impaired.